## Walter P. Knake v. Zoning Hearing Board of the Borough of Dormont et al. The Borough of Dormont, Appellant.

Argued March 2, 1983, before President Judge CRUMLISH, JR. and Judges MacPHAIL and BARBIERI, sitting as a panel of three.

*Phillip D. Paull,* for appellant.

*Robert M. Entwisle,* with him *Robert M. Entwisle, III, Miller & Entwisle,* for appellee.

OPINION BY JUDGE MACPHAIL, May 11, 1983:

The Borough of Dormont (Borough) has appealed from an order of the Court of Common Pleas of Allegheny County which reversed a decision of the Borough's Zoning Hearing Board (Board) and ordered that a five-unit occupancy permit be issued to Walter P. Knake (Appellee) for a building he owns in the Borough. We affirm.

The record and facts as found by the court of common pleas[1] establish that Appellee purchased the subject three-story building in 1937. At the time of purchase the structure was divided into four units and in 1948 a fifth unit was added. The building was thereafter occupied as a five-family dwelling until 1981 when Appellee was cited for a zoning violation. The subject property has at all relevant times been

[1] The court of common pleas in this case took additional evidence and was, accordingly, empowered to make its own findings of fact. Section 1010 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* added by Section 19 of the Act of June 1, 1972, P.L. 333, 53 P.S. §11010. Our scope of review, where the court of common pleas has taken additional evidence is to determine whether the court committed an abuse of discretion or error of law. *Girolamo Appeal,* 49 Pa. Commonwealth Ct. 159, 410 A.2d 940 (1980).

located in an R-2 zoning district which limits residences to one or two-family dwellings.

The sole issue raised in this appeal is whether Appellee is entitled to continue to use his property in violation of the Borough's zoning ordinance under a theory of variance by estoppel. The Board found that Appellee was entitled to continue to use four of the five units due to the Borough's acquiescence in multi-family use over a long period of time. On appeal and after a further hearing before a court-appointed referee, the court of common pleas determined that Appellee was entitled to the requested five-unit occupancy permit, again due in large part to municipal inaction with regard to the known violation. The instant appeal followed.

The case law regarding the theory of variance by estoppel, or vested rights as it is frequently termed, has not produced a clearly defined test for determining when it has become inequitable to enforce a particular zoning restriction against a landowner. In the case of *Sheedy v. Zoning Board of Adjustment*, 409 Pa. 655, 187 A.2d 907 (1963) our Supreme Court found that at least five factors converged to require the grant of a variance for a five-unit dwelling located in a single family zoning district. The five factors were that: 1) the present owners purchased the property believing in good faith that the multi-family use was lawful; 2) enormous expenditures would be required to reconvert the structure to a conforming use; 3) the municipality failed for twenty-three years to enforce the zoning restrictions; 4) the municipality was aware of the existence of the illegal use and 5) the multi-family use would present no threat to the public health, safety or welfare.

In a slightly different vein, the Supreme Court in *Heidorn Appeal*, 412 Pa. 570, 195 A.2d 349 (1963) ap-

plied a theory of laches to require a municipality to permit the continuation and reasonable extension of an existing zoning violation. The factors relied upon in *Heidorn* included the present owners' purchase of the building without knowledge of the zoning violation, municipal inaction for ten years combined with the obvious nature of the violation and the fact that there were no citizen protests to the zoning violation. Another pertinent case is *Township of Haverford v. Spica,* 16 Pa. Commonwealth Ct. 326, 328 A.2d 878 (1974) in which this Court concluded that the landowners there had a vested right to continue a commercial use in a residential district. Our conclusion was based on the facts that the municipality had granted a building permit to construct the building at issue in 1938 despite knowledge that the use proposed was a commercial one, that the municipality failed to take enforcement action for thirty-six years and that the zoning violation was of an obvious nature.

We lastly note the general principle that for an estoppel to occur there must be an innocent reliance by the party seeking the estoppel upon the representations or conduct of the adverse party. *Schaefer v Zoning Board of Adjustment, City of Pittsburgh,* 62 Pa. Commonwealth Ct. 104, 435 A.2d 289 (1981); *Glazer v. Zoning Hearing Board of Worcester Township,* 55 Pa. Commonwealth Ct. 234, 423 A.2d 463 (1980).

Applying this case law to the instant facts, we conclude that the Appellee is entitled to continue his five-unit occupancy despite the violation of existing zoning restrictions. First, the lower court found, and we agree, that when Appellee purchased the subject property in 1937 he believed in good faith that the existing multi-family usage was lawful. In view of

the date of purchase and the fact that occupancy permits were not required in the Borough until 1968, we do not think that this is a case where the purchaser should have known of the existing zoning violation at the time of the purchase. *Cf. Schaefer; Camaron Apartments, Inc. v. Zoning Hearing Board of Adjustment, City of Philadelphia,* 14 Pa. Commonwealth Ct. 571, 324 A.2d 805 (1974). This case also clearly involves a lengthy period of municipal inaction in enforcing the applicable zoning restrictions; forty-four years passed between the Appellee's date of purchase and the Borough's notification in 1981 that the multifamily use constituted a zoning violation. Moreover, the record clearly supports the finding by the trial court that the Borough, through its zoning officers, had actual knowledge of the illegal use since at least 1958. Furthermore, there were no citizen protests to the five-unit occupancy and no evidence that to continue the use would be detrimental to the public health, safety or welfare. Finally, municipal acquiescence is further demonstrated by the Borough's issuance of a building permit[2] to Appellee in 1970 to repair fire damage to the interior of the subject structure. The zoning officer who reviewed the permit application for possible zoning violations, testified that despite her knowledge that the building was in violation of the ordinance she nevertheless approved the permit application.[3] In reliance on the

[2] Several other building permits have been issued to Appellee since 1937 for various improvements to the subject structure; however, we agree with the trial court that they do not themselves demonstrate Borough knowledge of the illegal use.

[3] The zoning officer apparently believed that the structure constituted a valid nonconforming use. The record indicates, however, that the Borough's first zoning ordinance was enacted in 1927 and that the change to multi-family use occurred two years later in 1929, thus preventing legal nonconforming use status for the structure.

permit, Appellee subsequently spent $25,000-$30,000 for repairs to the building. We think Appellee has, accordingly, demonstrated detrimental reliance on the municipality's acquiescence in his five-unit apartment use.

We conclude that the facts discussed above, in combination, require that the Borough be estopped from denying Appellee a five-unit occupancy permit. We, accordingly, will affirm the order of the court of common pleas.

### Order

The order of the Court of Common Pleas of Allegheny County, dated March 9, 1982, is hereby affirmed.