Joseph Lebovitz and Fay Lebovitz, his wife *v*. The Zoning Board of Adjustment of the City of Pittsburgh. The City of Pittsburgh, Appellant.

Argued November 15, 1984, before Judges WILLIAMS, JR., DOYLE and Senior Judge BARBIERI, sitting as a panel of three.

*Kellen McClendon,* Assistant City Solicitor, with her, *D. R. Pellegrini,* City Solicitor, for appellant.

*Bernard S. Rubb,* for appellees.

OPINION BY JUDGE WILLIAMS, JR., January 25, 1985:

The City of Pittsburgh (City) has appealed from an order of the Court of Common Pleas of Allegheny County that granted to Joseph and Fay Lebovitz (Lebovitzes) the right to use a certain residential structure as a four-unit, multiple-family dwelling. By its order, the trial court reversed a decision of the City's Zoning Board of Adjustment (Board) denying the Lebovitzes an occupancy permit for such use.

The property here in question is a two and one-half story dwelling situated at 5849 Bartlett Street, in the City's 14th Ward. The zoning district in which the property is located has been subject, by provision

of the City's zoning ordinance of 1923 and the successor ordinance of 1958, to a regulation that restricts multiple-family dwellings to two units. The record in this case does not reveal when the building at 5849 Bartlett Street was constructed, or for how many families it was originally intended. The record does show, however, that in 1952 the City issued a building permit which indicated that the structure was a two-family dwelling.

In 1954, the property was sold to the Lebovitzes. Thereafter, in 1957, 1958 and 1961, the Lebovitzes applied for and obtained building permits which stated that the structure was to be used for two-family occupancy. In 1976, they obtained from the City a certificate of occupancy which also stated that the property was permitted to have two-family occupancy. The occupancy statements in the Lebovitzes' three building permits, and on their 1976 certificate, were all based on representations the Lebovitzes had made in applying to the City for those documents. Thus, on four occasions between 1957 and 1976, the Lebovitzes formally represented to the City that their property at 5849 Bartlett Street would have no more than two dwelling units—the maximum allowed by the zoning ordinance.

In December of 1982, the Lebovitzes applied to the City's Zoning Administrator for a new permit. In that application they stated that 5849 Bartlett Street had *four existing* dwelling units, and requested a permit to continue such use or occupancy. The Zoning Administrator denied the application on the ground that it violated the zoning ordinance. In that regard, the decision stated that the "legal existence" of the four dwelling units had not been proved. From the Administrator's decision, which was dated December 20, 1982, the Lebovitzes appealed to the Board.

In the proceedings before the Board, one of the witnesses for the Lebovitzes was a person who testified that he had done some remodeling work on the subject property soon after the applicants purchased it in 1954. This witness further testified that, when he viewed the house in 1954, it already had *five* separate units—each with its own living room, bedroom, bathroom and kitchen. However, a witness from the Office of the Zoning Administrator said his agency had on file a 1976 building-inspector's report which indicated that, *even as late as 1976,* the subject property contained *but two dwelling units.*

The only other witness to testify in the case was Mrs. Lebovitz. Her testimony was quite limited. The only information she provided was that the building had one gas meter and one electric meter, that she and her husband had installed a new gas line, and that they had increased the number of furnaces from two to three. Mrs. Lebovitz made no assertions of any kind concerning what beliefs she and her husband had, about occupancy restrictions, when they purchased the property in 1954. In fact, whatever those beliefs might have been, no issue or argument concerning them was ever raised by the applicants in the proceedings before the Board.

Counsel for the Lebovitzes conceded to the Board that he was unable to prove that the property in question had been used for more than two-family occupancy at any time prior to the enactment of the City's 1923 zoning ordinance. Accordingly, there was no argument that using the property as a four-unit dwelling would be the continuation of a prior, lawful, nonconforming use. Counsel's sole argument to the Board was as follows: that, because several other residential structures in the same block of Bartlett Street had even more than four dwelling units, and had been

granted certificates of occupancy for such use, the Lebovitzes should be permitted to use their property as a four-unit dwelling. In connection with this argument, counsel asserted that almost every building on the block was a multiple-unit dwelling, and that the average number of units per building was in excess of four.[1]

On January 20, 1983, the Board issued a written decision denying the Lebovitzes' appeal. The Board based its decision on the fact that the application had not proved a pre-1923 use of the subject property as a four-family dwelling. The Board's decision also ordered the applicants to reduce to two the number of dwelling units in the property. The Lebovitzes followed with an appeal to the Court of Common Pleas of Allegheny County, which considered the matter *without taking any additional evidence.*

The trial court agreed with the Board's determination that the Lebovitzes had not shown a lawful nonconforming use in terms of the occupancy for which they were seeking a permit. However, the court was also of the view that the applicants' argument to the Board—concerning the existence of other multiple-unit dwellings in the immediate neighborhood—was equivalent to asserting the theory of "variance by estoppel," or vested rights, as set forth in our decision in *Knake v. Zoning Hearing Board of the Borough of Dormont,* 74 Pa. Commonwealth Ct. 265, 459 A.2d 1331 (1983). The trial court then proceeded to find that, when the Lebovitzes purchased the subject property in 1954, they had "good reason to believe"

---

[1] The record in this case is silent as to the basis upon which these other structures were granted their occupancy permits. It is conceivable, as a Board member observed during the hearing, that these other buildings were shown to be prior nonconforming uses in terms of their present occupancy.

that it was lawful to use the building as a four-family dwelling. In reaching that conclusion, the court found that the property had five dwelling units when the Lebovitzes bought it, and that neighboring structures were being used as multiple-family dwellings. The court next concluded that, from 1954 onward, the Lebovitzes had continuously used the subject property as a four or five-unit dwelling; that for almost thirty years the City made no attempt to compel them to correct the zoning violation; and that the City's inaction displayed its acquiescence to such noncompliant use.

Based on the foregoing findings, and its reading of *Knake,* the trial court concluded that the City was estopped from denying the Lebovitzes the permit they sought. Consequently, by an order dated July 7, 1983, the court reversed the Board's decision; and directed that the permit be issued. The City responded by filing the instant appeal.

It is well settled that mere delay in municipal enforcement of a zoning regulation does not create a vested right to continue a violation. *E.g., Lennox v. Zoning Board of Adjustment of the City of Pittsburgh,* 67 Pa. Commonwealth Ct. 417, 447 A.2d 1049 (1982); *Ignelzi v. Zoning Board of Adjustment of the City of Pittsburgh,* 61 Pa. Commonwealth Ct. 101, 433 A.2d 158 (1981); *Draving v. Lower Southampton Township Zoning Hearing Board,* 40 Pa. Commonwealth Ct. 243, 397 A.2d 54 (1979). For the Lebovitzes to succeed in the instant case under the theory of "variance by estoppel," they had the burden of proving the existence of several elements, two of which are: (1) that they purchased the subject property while harboring a good faith belief in the legality of four-family occupancy; and (2) that the municipality, while having notice of the unlawful use of the

property, took no steps to correct the violation for many years. *Knake; Lennox; Draving; see Hasage v. Philadelphia Zoning Board of Adjustment*, 415 Pa. 31, 202 A.2d 61 (1964); *Sheedy v. Zoning Board of Adjustment*, 409 Pa. 655, 187 A.2d 907 (1963).

The Board's decision against the Lebovitzes contained no findings which bear upon the elements of "variance by estoppel." That omission, however, is understandable: In the proceedings before the Board, as we have already noted, the applicants made no assertion whatsoever that they purchased the subject property believing it to be a lawful four-unit dwelling. Nor did they attempt to show or assert that the City had *knowingly* ignored such unlawful use of the structure. Given the record of the Board hearing, we must say that the Lebovitzes did not even present an estoppel claim in those proceedings. Their sole argument, about the existence of other multiple-family dwellings in the same area, was not the equivalent of asserting a claim of "variance by estoppel"; and they would be so even if the Board had credited the applicants' evidence that the subject property had five units when they purchased it in 1954.

Since the trial court did not take additional evidence in this case, it had no basis for making the findings it did.[2] Not having taken additional evidence, the court's scope of review was restricted to determining if the Board committed a manifest abuse of discretion or an error of law. *Upper Providence Township Appeal*, 407 Pa. 20, 179 A.2d 194 (1962). We are constrained to hold that the court below ex-

[2] For a party to prevail under a theory of estoppel, he must establish the essential elements thereof by clear, precise and unequivocal evidence. *Funds for Business Growth, Inc. v. Maraldo*, 443 Pa. 281, 278 A.2d 922 (1971).

ceeded its proper scope of review. It is our further conclusion that, given the record made before the Board, the trial court should have affirmed the Board's decision.[3]

For the reasons set forth in this opinion, the order of the trial court must be reversed.

### ORDER

AND Now, the 25th day of January, 1985, the order of the Court of Common Pleas of Allegheny County dated July 7, 1983, at S.A. 89 of 1983, is hereby reversed.

---

[3] Because the trial court did not receive additional evidence, our own scope of review is also restricted to determining whether the Board committed a manifest abuse of discretion or an error of law. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983).