529 A.2d 551

Schuylkill Township *v.* James K. Overstreet and Evelyn M. Overstreet, et al. James K. Overstreet and Evelyn M. Overstreet, Appellants.

Schuylkill Township, Appellant *v.* James K. Overstreet and Evelyn M. Overstreet, h/w, et al., Appellees.

Schuylkill Township *v.* James K. Overstreet and Evelyn Overstreet, et al. Norma Boone, et al., Appellants.

Argued June 8, 1987, before Judges CRAIG and DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*William J. Gallagher,* with him, *Mary Ann Rossi* and *Susan J. Craig, MacElree, Harvey, Gallagher, O'Donnell & Featherman, Ltd.,* for appellant/appellees, Overstreet and Boone.

*Robert C. Houpt,* with him, *Roger E. Legg* and *Michelle R. Portnoff, Portnoff & Houpt, Ltd.,* for appellee/appellant, Schuylkill Township.

OPINION BY JUDGE CRAIG, July 21, 1987:

In *Overstreet v. Zoning Hearing Board of Schuylkill Township,* 49 Pa. Commonwealth Ct. 397, 412 A.2d 169 (1980), this court affirmed an order of the Court of Common Pleas of Chester County denying Mr. and

Mrs. Overstreet a zoning variance to expand their mobilehome park into the eastern portion of their property. Despite the order of the court of common pleas, the Overstreets expanded their mobilehome park. Consequently, Schuylkill Township brought this action in equity to enjoin the Overstreets from maintaining a mobilehome park on that section of their land. The Overstreets appeal from an order of the Court of Common Pleas of Chester County requiring some of the park residents to vacate the land and the Overstreets to pay a penalty to the township. Certain park residents also appeal from the same order, and the township has appealed from the trial judge's refusal to apply the vacation order to tenants who resided on the eastern portion of the property on or before August 1, 1983.

## *Jurisdiction*

The Overstreets first contend that the court of common pleas lacked jurisdiction to enter an order enjoining their use of the eastern portion of the property as a mobilehome park because the township did not join all of the residents of the park as co-defendants. The township's initial complaint named only the Overstreets as the defendants in the case. Judge LAWRENCE E. WOOD ordered that the township join the park tenants who would be affected by the injunction sought. This court affirmed Judge WOOD's order on interlocutory appeal because the park tenants were indispensable parties whose rights would be adversely affected by the injunction sought by the township. *Schuylkill Township v. Overstreet,* 71 Pa. Commonwealth Ct. 348, 454 A.2d 695 (1983).

The township amended its complaint to join the tenants of lots 52 through 97 and 99 through 121 with the Overstreets as co-defendants. In the Overstreets' answer to the amended complaint, they identified 29 in-

stances in which the tenants identified in the amended complaint were not the actual tenants of the lots in question. Our comparison of the lists reveals that, in most instances, the township's complaint had merely failed to identify or delete names of tenant spouses in instances where the marital status of a tenant had changed over the course of the litigation. However, the township's answer also acknowledges that certain tenants were never joined as co-defendants with the Overstreets. The Overstreets contend that the township's failure to join those tenants, as indispensable parties, deprives the court of jurisdiction over the entire proceeding.

A court in equity cannot grant relief without the joinder of indispensable parties. *Columbia Gas Transmission Corporation v. Diamond Fuel Co.,* 464 Pa. 377, 346 A.2d 788 (1975). A party is indispensable when his rights are so connected with the claims of the litigants that no decree can be fashioned between them without impairing those rights. *Reifsnyder v. Pittsburgh Outdoor Advertising Co.,* 396 Pa. 320, 152 A.2d 894 (1959); *Hartley v. Lang Kamp & Elder,* 243 Pa. 550, 90 A. 402 (1914).

We earlier held that tenants were indispensable parties because the court of common pleas could enter no decree enjoining the use of the land without affecting the rights of at least some of the tenants. *Schuylkill Township.* In the present case, however, the township joined the majority of the tenants as parties to the action. Thus, it is possible for the court to enter a decree affecting the rights of those tenants joined as parties as long as the rights of those tenants who were omitted as co-defendants are undisturbed. As the township argues, for this court to halt the entire proceeding because the township failed to amend its complaint every time a tenant moved into or out of the eastern portion of the

mobilehome park would effectively deprive the township of a forum and would cause further expense and delay in a controversy that has already lingered for too many years.

We therefore conclude that the court of common pleas had jurisdiction to enter its decree as to those tenants or tenant spouses named as co-defendants on the township's amended complaint, but we must reverse the order to the extent that it would apply to any tenant who was not served with the township's amended complaint as a co-defendant.[1]

## Estoppel—Vested Right

The tenants and the Overstreets argue that the township is estopped from seeking equitable relief because its conduct over the last 20 years led the tenants to believe that the mobilehome park was a permitted use and the Overstreets to believe that the township would acquiesce in their expansion of the nonconforming use of their land.[2]

---

[1] During the trial, counsel for the township elicited testimony from an associate of his firm on how the associate determined the names of the tenants on the eastern portion of the Overstreet mobilehome park to join as co-defendants. The Overstreets object to the attorney's testimony on the ground that it violates DR 5-102 which requires an attorney to withdraw from a case if he or another attorney in his firm is likely to be called to testify in the case. We affirm Judge Wood's overruling of the objection because the associate's testimony falls within exception (B)(2) of the rule—testimony relating solely to a matter of formality—and exception (B)(3), testimony relating to the nature of legal services provided.

[2] The Overstreets also contend that they are entitled to continue their present use of the property because of laches on the part of Schuylkill Township. We need not analyze this claim because it duplicates their claim as to estoppel. The authorities cited by the Overstreets to support their claim of laches, *Heidorn Appeal*, 412 Pa. 570, 195 A.2d 349 (1963) and *Township of Haverford v. Spica*,

Judge WOOD made the following findings of fact:

4. In March, 1967, Defendant James Overstreet was 'cited' by the Township for moving trailers into the Eastern section of the tract. The record is not clear as to the ultimate outcome of the citation proceeding.

5. In the late 1960's the Township approved sewage facilities serving the eastern portion of the park.

6. In the summer of 1968, the Overstreets filed an application for an expansion of the park to the eastern portion of the tract, known as the area east of Park Drive.

7. The Township Zoning Hearing Board denied that application in 1969, finding the proposal to be an unlawful expansion of what was already a nonconforming use. That decision was affirmed by this Court in 1978 and ultimately by the Commonwealth Court in 1980: Overstreet v. Zoning Hearing Board of Schuylkill Township, 49 Pa. Cmwlth. Ct. 397, 412 A.2d 164 (1980). The Supreme Court of Pennsylvania denied a petition for allowance of appeal from the Order of the Commonwealth Court.

8. In disregard of the Board's decision, the Overstreets continued to expand the park into the eastern section of the parcel throughout the entire history of the zoning litigation in this matter, installing mobile home pads, roads, curbs, water lines, a sewage plant, electrical lines and lights in accordance with the plan rejected by the Board.

---

16 Pa. Commonwealth Ct. 326, 328 A.2d 878 (1974), are distinguishable on the basis of the Overstreets' knowing violation of the township's ordinance.

9. The Overstreets have sold mobile homes for placement in the eastern section since 1969, have leased mobile home spaces therein to such purchasers, and have collected rents therefrom. They continue to do so to the present. The occupants of that area constitute the remaining Defendants in this matter.

10. Other than this litigation, the 1967 citation and the above-mentioned zoning appeals, the Township had done nothing to rid itself of the illegal development. Rather, it has sat by while more and more residents made their homes in the eastern portion of the park and have expended considerable sums in improvements to their trailers and lots.

11. During this entire period the Township has provided municipal services to the eastern section and has collected real estate taxes and an earned income tax from the residents. Since 1969 the real estate taxes have even increased based upon an assessment made as a result of road installation and other improvements to that section of the park.

12. Prior to the service of the Township's Amended Complaint in this matter in July of 1983, the Township did not provide the residents of the eastern section with formal notice that their presence there was contrary to the applicable zoning laws and the decisions of the Zoning Hearing Board and Courts of Appeals.

13. None of the residents of the eastern section were parties to the zoning litigation.

The parties do not contest the validity of the findings. Our scope of review, therefore, is limited to a question of whether Judge WOOD's crucial Finding of Fact No. 10, in light of the history of the Overstreets' development, supports the legal conclusion that the

park tenants who resided on the eastern portion of the property on or before August 1, 1983 are entitled to a status vested by estoppel but that the Overstreets are not so entitled.

Although municipal inaction alone is not sufficient, *Lennox v. Zoning Board of Adjustment of Pittsburgh,* 67 Pa. Commonwealth Ct. 417, 447 A.2d 1049 (1982), *Ignelzi v. Zoning Board of Adjustment of Pittsburgh,* 61 Pa. Commonwealth Ct. 101, 433 A.2d 158 (1981), "[w]here municipal inaction is compounded by facts which create a strong equity in the owner, the decision of the Supreme Court in Sheedy v. Philadelphia Zoning Board of Adjustment, 409 Pa. 655, 187 A.2d 907 (1963), indicates that relief is possible." R. Ryan, Pennsylvania Zoning Law and Practice, §8.3.5 (1970).

In *Caporali v. Ward,* 89 Pa. Commonwealth Ct. 621, 493 A.2d 791 (1985), we established three prerequisites to receiving the benefit of an estoppel: (1) municipal failure to enforce the law over a long period of time or some form of "active" acquiescence of the illegal use; (2) good faith throughout the proceedings by the property owner; and (3) innocent reliance evidenced by substantial expenditures. *Id.* at 625, 493 A.2d at 793-94 (*citing Sheedy; Lebovitz v. Zoning Board of Adjustment of Pittsburgh,* 87 Pa. Commonwealth Ct. 200, 486 A.2d 1061 (1985); *Knake v. Zoning Hearing Board of Dormont,* 74 Pa. Commonwealth Ct. 265, 459 A.2d 1331 (1983)).

As to the Overstreets, Judge WOOD rejected their claim "because they knew all along that their proposed expansion was illegal and deliberately violated both the zoning ordinance and the orders of all the tribunals which heard the zoning matter." Judge WOOD's conclusion is supported by Findings of Fact Nos. 8 and 9 and the fact that the Overstreets' conduct fails to satisfy the second leg of our *Caporali* test which requires good faith by the property owners.

As to the tenants, Judge WOOD granted vested status to those tenants who were in residence on the eastern portion of the property on or before August 1, 1983—the date on which the township served its amended complaint on the tenants. Findings of Fact Nos. 9 through 13 evince the township's "active acquiescence" toward the tenants' illegal use of the property, substantial expenditures by the tenants based on innocent reliance on the township's inaction, and lack of any formal notice to the tenants that their use of the land violates a township ordinance. We therefore affirm the court of common pleas order exempting the tenants residing on the eastern portion of the park on or before August 1, 1983, while not doing so as to the Overstreets.

## Judicial Notice of Ordinance

The Overstreets next contend that the record in the present case is insufficient to support the grant of an injunction because, lacking evidence or proper judicial notice of the zoning ordinances in question, the township has failed to prove that the Overstreets use their land in an illegal manner. This contention overlooks the fact that the same parties adjudicated the issue of the Overstreets' compliance with the Schuylkill Township Zoning Code in an earlier proceeding.

In *Overstreet v. Zoning Hearing Board of Schuylkill Township,* we affirmed the Chester County Court of Common Pleas' order which concluded, based on a referee's study of the Schuylkill Zoning Code, that the Overstreets could expand the mobilehome park into the eastern portion only by way of a variance and that such a variance was unjustifiable. The premise to that conclusion is that the Overstreets' proposed expansion does not conform to the existing code. Because the Overstreets failed to challenge that premise in the variance

proceedings, collateral estoppel precludes litigation of that issue in the current enforcement proceeding.[3] *See Baker v. Pennsylvania Human Relations Commission,* 75 Pa. Commonwealth Ct. 296, 462 A.2d 881 (1983), *modified on appeal,* 507 Pa. 325, 489 A.2d 1354 (1985).

### *Penalty Assessment*

Although the township's amended complaint did not request the court to assess a penalty against the Overstreets, Judge WOOD nonetheless directed the Overstreets to pay the township 20% of the gross lot rentals collected since August 1, 1983 from those persons who are entitled to remain on the premises because of the variance by estoppel. In his supplemental opinion, Judge WOOD justifies the penalty as a "prophylactic device designed to bring the property into compliance with the zoning ordinance" under section 617 of the Pennsylvania Municipalities Planning Code.[4]

This court has upheld equity adjudications in which the chancellor granted an injunction while also imposing a civil fine for violation of a zoning ordinance. *Babin v. City of Lancaster,* 89 Pa. Commonwealth Ct. 527, 493 A.2d 141 (1985); *City of Philadelphia v. Stradford Arms, Inc.,* 1 Pa. Commonwealth Ct. 190, 274 A.2d 277 (1971). The Overstreets contend, however, that the court should refrain from assessing a penalty when the township did not request such relief in its pleadings.

The general policy of our courts is to limit equitable relief to that which is prayed for. *Christian v. Johnstown*

---

[3] We note the Overstreets' argument that the variance adjudication was based on the 1955 version of the township's zoning code which has since been amended. We also note from the pleadings, however, that the Overstreets fail to aver that their use of the eastern portion of the property is in any way authorized by the amended code.

[4] Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10617.

*Police Pension Fund Association,* 421 Pa. 240, 218 A.2d 746 (1966). Although section 617 authorizes "an officer of the municipality" to "institute in the name of the municipality any appropriate action or proceeding to prevent, restrain, correct or abate" zoning ordinance violations, it does not authorize the chancellor sua sponte to impose fines against the ordinance violator. A review of *Babin* and *City of Philadelphia* reveals that the municipalities in both instances specifically prayed for penalties in their pleadings.

We, therefore, reverse Judge WOOD's order to the extent that it imposes a penalty on the Overstreets. If the injunction is disobeyed, the contempt remedies, enforceable by fines, are available.

## ORDER IN 1364 C.D. 1986

Now, July 21, 1987, the order of the Court of Common Pleas of Chester County, entered April 10, 1986, is affirmed to the extent that: (1) the Overstreets are directed to remove all improvements related to mobilehome use from vacant lots, and lots vacated under this court's order, in the eastern section of their property; (2) the Overstreets are enjoined from leasing or releasing any vacated lots for mobilehome use in the eastern section of their property; and, (3) tenants who have been joined as parties in this case and who did not reside at the Overstreet mobilehome park before August 1, 1983, are directed to vacate their respective lots.

The trial court's order is reversed insofar as it would have: (1) directed the Overstreets to pay the township a penalty; and (2) directed tenants, if not named as defendants in this case, to vacate their lots in the eastern section of the property.

## Order in 1429 C.D. 1986

Now, July 21, 1987, the order of the Court of Common Pleas of Chester County, entered April 10, 1986, is affirmed to the extent that: (1) the Overstreets are directed to remove all improvements related to mobilehome use from vacant lots, and lots vacated under this court's order, in the eastern section of their property; (2) the Overstreets are enjoined from leasing or releasing any vacated lots for mobilehome use in the eastern section of their property; and (3) tenants who have been joined as parties in this case and who did not reside at the Overstreet mobilehome park before August 1, 1983, are directed to vacate their respective lots.

The trial court's order is reversed insofar as it would have: (1) directed the Overstreets to pay the township a penalty; and (2) directed tenants, if not named as defendants in this case, to vacate their lots in the eastern section of the property.

## Order in 1493 C.D. 1986

Now, July 21, 1987, the order of the Court of Common Pleas of Chester County, entered April 10, 1986, is affirmed to the extent that: (1) the Overstreets are directed to remove all improvements related to mobilehome use from vacant lots, and lots vacated under this court's order, in the eastern section of their property; (2) the Overstreets are enjoined from leasing or releasing any vacated lots for mobilehome use in the eastern section of their property; and, (3) tenants who have been joined as parties in this case and who did not reside at the Overstreet mobilehome park before August 1, 1983, are directed to vacate their respective lots.

The trial court's order is reversed insofar as it would have: (1) directed the Overstreets to pay the township a penalty; and (2) directed tenants, if not named as defendants in this case, to vacate their lots in the eastern section of the property.