646 A.2d 655

**Audrey L. SICO, Appellant,**

**v.**

**INDIANA TOWNSHIP ZONING HEARING BOARD, Indiana Township.**

Commonwealth Court of Pennsylvania.

Argued March 1, 1994.

Decided July 29, 1994.

322

Robert G. Xides, Jr., for appellant.

William R. Sittig, Jr., for appellee Indiana Tp. Zoning Hearing Bd.

William E. Adams, for appellee Indiana Tp.

Before CRAIG, President Judge, KELLEY, J., and RODGERS, Senior Judge.

CRAIG, President Judge.

The appellant, Audrey Sico, asks this court to reverse the decision of the Court of Common Pleas of Allegheny County in which the trial court affirmed the decision of the Indiana Township Zoning Hearing Board denying Sico's request for a variance from the Township of Indiana Ordinance No. 217 as amended ("the ordinance" or "the zoning ordinance") to validate the reconstruction, relocation and expansion of her private stable, which she had carried out before requesting the variances. We reverse in part and affirm in part.

The facts as found by the board and established in the record are as follows. Sico owns approximately two acres of property at 595 Dorseyville Road in Indiana Township. In 1966, Sico requested and received a building permit to erect a tool shed on her property. But, instead of constructing a tool shed, Sico erected a stable on the lot housing three horses. At that time, the lot was zoned R–1 Agricultural Residence District, in which stables were essentially unregulated.

In 1972, her property was rezoned to R–2 Suburban Residential, and in 1990 the township enacted Ordinance No. 242, amending the zoning ordinance at § 304.3 to allow a stable as a permitted accessory use in the R–2 District, subject to stringent regulations and limitations, as follows:

304.3. A private stable as an accessory use to a one-family house in the R–2 and R–3 Districts subject to the following standards and criteria:

(a) A private stable may be permitted only for parcels of land containing three acres or more.

(b) The proposed private stable or any enlargement or addition to an existing private stable shall be of substan-

tial construction and shall be architecturally compatible with the neighborhood where it will be built. No private stable or corral shall be located at a distance of less than one hundred (100) feet from any lot or street line.

(c) The number of horses or ponies to be kept in the proposed private stable shall not exceed two (2) for every three acres in the lot or parcel, provided that not more than two (2) foals less than nine (9) months in age may be added to the number of horses or ponies derived from the above calculation. Unless the Hearing Board makes specific findings that the lot or parcel of land and the surrounding community can accommodate more, no lot or parcel shall stable more than twenty-five (25) horses or ponies.

In 1992, Sico dismantled the original stable and a covered, three-sided "bulkhead" that had been built near the stable without any building permit some time after 1966, and which had previously been used to house two horses. Sico then built a new stable to house five horses that is larger than the original, and closer to her neighbor's property line. She *then* petitioned the board for building permits for the new stable, which the board denied. Later Sico requested a variance from lot-size and side-yard restrictions; the board denied the variance.

Sico's new stable runs afoul of several zoning requirements. Initially, we note that § 304.3(a) of the ordinance limits stables to lots at least three acres in size. In addition, § 304.3(c) permits only two horses for each three acres of land on the lot. Sico has five horses and ponies on approximately two acres. Next, the board found that the new stable is closer to the property line than the old stable. Whereas the building permit issued in 1966, under which Sico constructed the original stable, authorized construction 30 feet from the property line, the new stable is 22 feet from the property line. Also, because Sico's property is only 200 feet wide, and § 304.3(b) of the ordinance requires stables to be 100 feet from all property lines, any expansion of Sico's original stable violates § 304.3(b).

Furthermore, § 301.5(A) of the ordinance, which is one of two ordinance sections discussed in greater detail below, regulating the expansion of nonconforming uses by special exception, prohibits any increase in noncompliance by an expanded nonconforming use. Thus, even if Sico's expansion of the stable fell under the special exception provisions, by violating the § 304.3(b) side-yard requirements, it also violates § 301.5(A) by increasing the stable's nonconformity.

In addition, the board concluded that the original stable was not a legal nonconforming use because it had not been constructed pursuant to a building permit for a stable, but for a tool shed. Thus, the board concluded that Sico cannot be permitted to reconstruct or expand what, in the board's view, was an illegal structure. The board also concluded that Sico failed to meet the burden of proof necessary to receive a variance, and denied her petition.

Sico appealed to the trial court, which did not take additional evidence. The trial court disagreed with the board's characterization of the original stable as illegal. The language of the trial court, in pertinent part, is as follows:

First, a building permit was obtained for an accessory structure on the property, albeit not specifically for a stable.... Second, the stable was a permitted use when it was built, the only irregularity at the time of its inception being a lack of a permit. Finally there is no evidence that Mrs. Sico was ever cited or otherwise made aware of any problem with the original stable until the present difficulties arose. In fact, Mrs. Sico was granted another variance in 1972 permitting her to open a tack shop on the property. Any objection to the original barn by the Township should have been made long before the present time. [Thus] ... the stable as it existed prior to 1990 did constitute a legal nonconforming use, and as such Mrs. Sico has a right to continue it.

Nonetheless, the trial court agreed with the board that the original stable could not be expanded without a variance and that Sico did not present sufficient evidence to establish her eligibility for a variance. Thus the trial court affirmed the

board's decision, except for holding that the stable could only be kept on the property if it were to be reconstructed to its original size and location.

Now Sico comes before this court and asks that we reverse the decision of the trial court. Sico contends that the stable use has the status of a legal nonconforming use, so that what she has constructed is allowable under the doctrine of natural expansion of nonconforming uses. Sico also argues that the new construction is valid because she merely enclosed an open-air portion of a legal nonconforming use by incorporating the original stable and the bulkhead into the new stable.

After reviewing the record and the briefs, our summary of the issues presented in this case is the following:

1. DID THE ORIGINAL STABLE AND BULKHEAD CONSTITUTE A LEGAL NONCONFORMING USE, OR REST ON A VESTED RIGHT BY ESTOPPEL?

2. IS THE DOCTRINE ALLOWING A NATURAL EXPANSION OF BUSINESS USES APPLICABLE?

3. IS THE NEW CONSTRUCTION JUSTIFIED ON THE THEORY THAT IT ENCLOSED OPEN SPACE FORMERLY USED FOR THE NONCONFORMING USE?

4. IS THE SPECIAL EXCEPTION FOR EXPANSION OF ANY NONCONFORMING USE APPLICABLE?

5. WOULD THE RECONSTRUCTION OF THE ORIGINAL STABLE BE JUSTIFIED UNDER THE ORDINANCE PROVISION FOR THE RECONSTRUCTION OF NONCONFORMING USES?

Our standard of review in zoning appeals from the common pleas court where the trial court did not take additional evidence is limited to determining whether the board has committed an error of law or made findings of fact that are not supported by the evidence in the record. *Jenkintown Towing Service v. Zoning Hearing Board,* 67 Pa.Commonwealth Ct. 183, 446 A.2d 716 (1982).

## 1. Did the Original Stable Use Have Legal Nonconforming Use or Vested Right Status?

The ordinance defines a nonconforming use as follows: NON-CONFORMING USE: Any use or arrangement of land or structures which does not conform to the provisions of this Ordinance, which was legally existing at the time of enactment of this Ordinance or of any amendment to this Ordinance which created such non-conformity.

We note that stables are now a permitted accessory use in the R-2 district. Thus, operating a stable is not a nonconforming use unless the stable's location and dimensions violate lot-coverage, set-back, side-yard and other similar rules.

The trial court concluded, as we quoted in our statement of the case, that Sico's original stable was a legal nonconforming use despite Sico's improper construction of the stable under a building permit for a tool shed. The court apparently based this conclusion on its belief that the township must have known about the stable in 1972 and decided not to charge Sico with a building violation then. Thus the trial court estopped the township from characterizing the original stable as illegal in 1992[1] and held that Sico had established the stable's nonconforming use status.

In addition, the trial court granted Sico a significant land use status when the court held that Sico had a limited variance. Specifically, after the court decided that the board nonetheless properly denied Sico's variance, the court held that "Mrs. Sico has met the requirements for a *variance to rebuild the old stable.* Because Mrs. Sico purchased this property when the stable was a permitted use and has maintained that use steadily for nearly 30 years, to be completely deprived of it would be an undue hardship." (Emphasis added.)

---

1. However, we note that the fact that Sico received a variance in 1972 does not suggest that the board knew of the stable at that time. There is no evidence to suggest that the tack shop operated out of the stable. (See the next section of this opinion for our analysis.) Thus, the board would not necessarily know about the stable because it was not associated with the tack shop.

Thus, the trial court held that because of the equities involved in this case, Sico "acquired" nonconforming use status for the original stable and a variance to reconstruct the original stable. Our review of the trial court decision suggests that the court relied upon the theory of "Vested Rights Arising Out of Municipal Acquiescence in the Continued Existence of an Illegal Use," in concluding that Sico had a legal right to reconstruct and operate her stable. *See* Ryan, *Pennsylvania Zoning Law and Practice* § 8.3.5 (1992). This is a legal theory that is an alternative route for a land owner to assert a right that cannot otherwise be established by way of a nonconforming use or a pure variance claim.

■ However, Sico's maintenance of a stable for 30 years does not justify granting "a variance to rebuild". Mere inaction on the part of a municipality will not estop it from denying a variance, *Schuylkill Township v. Overstreet*, 107 Pa.Commonwealth Ct. 492, 529 A.2d 551 (1987), and in this case there is no evidence in the record that the board or the township even knew of the existence of Sico's stable before 1992. (Our discussion of this point follows.)

Furthermore, the board asks that we reverse the trial court's conclusion that Sico has a legal nonconforming use. The board argues that the equities of this case, whatever they may be, do not outweigh the fact that Sico never received a permit to construct the original stable or the bulkhead. The board acknowledges that under some circumstances nonconforming business uses may be expanded and enclosed without receiving a variance. However, according to the board Sico cannot rely upon those arguments to escape the necessity of securing a variance because she never had a legal nonconforming use. Therefore, in the board's view, Sico cannot reconstruct, expand, relocate or maintain a stable without first receiving a variance because of Sico's lot's size and dimensional problems.

However, we are content to assume, without deciding, that Sico's original stable had nonconforming use status. Nonetheless, as our discussions below will reveal, Sico does not have

any present legal right to maintain a new stable based upon the legal status of the original stable. Of course, our conclusion on this point makes Sico's arguments here moot, but we will address all of her arguments for the sake of providing a complete, responsive analysis.

### 2. Is the Doctrine Allowing a Natural Expansion of Business Uses Applicable?

■ The doctrine of natural expansion permits owners of legal nonconforming *business* uses to expand the area of a business use when there is an increase in business trade without seeking a variance. This court previously considered the questions surrounding expansion of such nonconforming uses in *Jenkintown Towing.* In relevant part, we noted the following:

> The right to expand a nonconforming use to provide for the natural expansion and accommodation of increased trade "is a constitutional right protected by the due process clause." Accordingly, "a municipality cannot prohibit per se the natural expansion of a non-conforming use." Nevertheless, the Pennsylvania Supreme Court has stated that:
>
> > [The right of expansion] is not unlimited, however. The contemplated expansion must not be detrimental to the public health, welfare and safety. We have never questioned the right of a municipality to impose reasonable restrictions on the expansion of a non-conforming use.
> >
> > . . . .
>
> Thus, the Supreme Court and this court have steadily indicated that *the rights of a nonconforming use are not such as to give it any greater standing than a conforming use in the same district;* either one will be allowed to go beyond ordinance dimensional limitations only if a variance is obtained.

*Id.,* 67 Pa.Commonwealth Ct. at 186, 189–90, 446 A.2d at 718, 719 (citations omitted, emphasis in original).

■ The doctrine of natural expansion is inapplicable in this case because the doctrine applies only to nonconforming business uses. *Tantlinger v. Zoning Hearing Board of South*

*Union Township,* 103 Pa.Commonwealth Ct. 73, 519 A.2d 1071 (1987). The board found that the stables are not used for business purposes and, therefore, the structure cannot be expanded under the nonconforming business use doctrine.

Sico contends that the stable is used for business purposes related to her tack shop and that the stable has been used to sell horses. But these contentions are not supported by Sico's uncontested testimony before the board, which, in pertinent part, follows:

MR. BUCKLEY: You said your husband—the horses are your children's and your husband had a business?

MS. SICO: He had a business with it, yeah.

MR. BUCKLEY: I notice there is a sign still in front of the—

MS. SICO: I have a business there myself. I sell horse equipment. That's my business.

MR. BUCKLEY: Not—

MS. SICO: Not horses, no.

MR. BUCKLEY: Not horses?

MS. SICO: No.

MR. BUCKLEY: Is that what the sign portrays?

MS. SICO: Yes.

MR. BUCKLEY: How long have you been doing that?

MS. SICO: Myself, for five years. Before that with my ex, since '72 I believe it was.

. . . .

MR. SITTIG: Where do you store the equipment, the horse equipment that you sell?

MS. SICO: Once I sell it?

MR. SITTIG: Yes.

MS. SICO: In back of this structure that we live in; the house.

MR. SITTIG: Is there any part of the business that goes on outside of the house?

MS. SICO: I don't know what you mean by that.

MR. SITTIG: Well, does the house accommodate all of the commercial—

MS. SICO: No, I have some other equipment outside the house I can't store inside.

MR. SITTIG: Like what?

MS. SICO: I have a trailer. It's a house. I have a trailer and I store some of the equipment in.

. . . .

MR. BUCKLEY: Is there not at least two facilities, two trailers?

MS. SICO: Yeah.

One's a—it's used for equipment too. It's in the driveway, yeah.

. . . .

MR. SITTIG: Ms. Sico, you've testified this [stable] is strictly for personal use?

MS. SICO: *Strictly for personal;* no more or not less. It's just my children's horses and mine and never more. *It is not a business. It will never be a business. Horses will never be a business.*

It was at the point when my husband was there. He has been gone since 1987, and that's the horses that have been there since 1987. He took all the horses with him and that was the end of it. (Emphasis added.)

There is no evidence in this or any testimony from this record to suggest that the stable has been used to sell Sico's equipment, and Sico's testimony indicates that the stables have not been used for selling horses since 1987, at least.

Thus, there is no evidence in the record to support Sico's contention that the stable is incidental to any business involving horses or her tack shop on the property. Accordingly, there is no evidence that business is expanding. Therefore, the doctrine of natural expansion cannot be applied in this case, and Sico may only expand or relocate her stable if she can do so in accordance with the zoning ordinance, or, if that is impossible, by receiving a variance.

■ Moreover, in no event could Sico expand a nonconforming business use beyond district-wide requirements without seeking a variance. In this case, the district-wide requirements include the provisions of § 304.3 governing stables in the R–2 district.

However, Sico also contends that the R–2 dimensional requirements relating to stables may be ignored. She asserts that *Jenkintown Towing* holds that expanding nonconforming uses only require a variance for dimensional limits applicable to *all* uses. On the contrary, *Jenkintown Towing,* as we quoted above, holds that nonconforming uses are not granted more rights or privileges than conforming uses.

### 3. Is the New Construction Justified on the Theory that it Enclosed Open Space Formerly Used for the Nonconforming Use?

■ Sico also contends that her new stable merely encloses that portion of her original stable that was formerly conducted in the open, presumably those activities related to the three-sided, open bulkhead. The board and the township argue that Sico did not raise this question before the trial court or the board. However, this argument is related to the expanding use exception afforded to legal nonconforming business uses. *See Jenkintown Towing* and *Sullivan v. Zoning Board of Adjustment,* 83 Pa.Commonwealth Ct. 228, 478 A.2d 912 (1984). Therefore, Sico raised this argument at the earlier proceedings of this case by arguing that she has a nonconforming business use. Of course, because Sico does not have an expanding business use, she cannot succeed on this expression of the business exception, either.

Moreover, there is no proof that the increased size of Sico's stable can be attributed to those activities that had been previously conducted in the open. There is no evidence in the record that allows us to conclude that the increase in the size of the stable is a result of the addition of any former open-air uses to the original stable. Sico carries the burden of proof on this point, and she did not introduce any evidence of the size of the original stable and the open uses she enclosed. Thus,

because there is no evidence of any business use or of former activities within the open area now enclosed, Sico cannot establish a prima facie case under this exception.

### 4. Is the Special Exception for Expansion of Any nonconforming use applicable?

The ordinance provides another possible route for Sico to expand her stable, assuming that the original stable had legal nonconforming use status. She could, if granted a special exception, expand *any* type of nonconforming use. Specifically, the board may grant a special exception to an applicant if the criteria set forth at §§ 301.5 and 301.5(A) are met.

301.5 Where a non-conforming use is conducted inside a structure, the floor area of the structure and the nonconforming use within it may be enlarged to an extent not greater than twenty-five percent of the floor area existing at the time of adoption of this Ordinance, when permitted by the Hearing Board in accordance with the following:

301.5(A) There shall be no increase in noncompliance, if any, with lot and yard requirements....

Therefore, a land owner may enlarge the floor area of a nonconforming use of any type up to 25% of its original size or to the maximum lot and yard requirements, whichever is less.

As we noted in our statement of the facts, Sico's new stable violates four ordinance provisions. The lot is too small; the number of horses and ponies on the lot is too large; the stable is now closer to the property line than the original stable; and the further expansion of the stable's area has resulted in a violation of the required 100' minimum distance between her stable and her neighbors' property.

Also, the only evidence in the record addressing the measurement of the increased size of the stable, which evidence was offered by Sico before the board, indicates that the new stable is roughly 48% larger than the original. Sico's testimony on this issue places the new stable far in excess of the permitted 25% floor area expansion allowed under § 301.5 of the ordinance.

Sico suggests that her testimony concerning the size increase is merely a guess and should not have been taken seriously or used as a basis for finding additional nonconformance on her part. However, Sico's testimony is the only evidence addressing the question of increased size of the stable, and the board as fact finder must make determinations of credibility. It chose to give her first-hand familiarity with the stable weight as credible evidence, and we cannot disturb its decision to do so.

Thus, Sico cannot expand her legal nonconforming use without receiving a variance from the above cited sections of the ordinance. However, the board concluded that Sico did not prove her entitlement to a variance. On appeal here, Sico does not dispute that conclusion. Therefore, we will affirm the board's decision denying a variance.

### 5. Is the Reconstruction of the Original Stable Justified Under the Ordinance Provision for the Reconstruction of Nonconforming Uses?

█ The trial court held that Sico's original stable was a legal nonconforming use, but that it could not be expanded or moved. Rather, the trial court held that the original stable in its original location could now be reconstructed pursuant to § 301.3 of the ordinance. Specifically, the trial court stated that "[t]he ... Ordinance provides that a nonconforming structure may be reconstructed after damage by 'fire, flood, explosion, or other casualty.' ... However, the stable must be scaled back to its pre–1972 [the year Sico's property was zoned R–2] location and dimensions."

However, Sico does not have any right to reconstruct the original stable under the facts of this case. If the original structure was illegal, as the board concluded, then she had to seek a variance to build a new stable that would conform with all zoning requirements.

If, on the other hand, the original stable was legal, as the trial court concluded, then Sico abandoned that nonconforming use by demolishing the original stable. Section 301.4 of the ordinance provides the pertinent rule in this circumstance:

"In the event that a non-conforming use, conducted in a structure or otherwise, ceases, for whatever reason, for a period of one year, or is abandoned for any period, such nonconforming use shall not be resumed." The language of this section is clear. Any abandonment for any time destroys the existence of a nonconforming use.

Nonetheless, even if the original stable was a legal nonconforming use that was not abandoned, § 301.3 of the ordinance allows nonconforming uses to be reconstructed only if the structure is damaged "by fire, flood, explosion, or other casualty." Sico voluntarily eliminated the original stable. That is not a casualty. Therefore, the trial court erred in concluding that the original stable may be reconstructed under § 301.3.

### Conclusion

Accordingly, we reverse the decision of the trial court insofar as it held that Sico can reconstruct the original stable under § 301.3 of the ordinance, and also insofar as it held that maintaining her stable for 30 years justified granting Sico a variance to reconstruct her stable to its original size on its original site.

In all other respects, we affirm the decision of the trial court in concluding that Sico does not now have a legal nonconforming business use, that she did not meet the requirements of the ordinance for expanding and relocating her stable, and that Sico has not established a right to a variance for her new stable.

### ORDER

NOW, July 29, 1994, the order of the Court of Common Pleas of Allegheny County, No. S.A. 829–93, dated September 7, 1993, is reversed insofar as it concludes that the original stable may be reconstructed in its original size and location. In all other respects, the order is affirmed.