**SOUTH COVENTRY TOWNSHIP BOARD OF SUPERVISORS, Appellant,**

v.

**ZONING HEARING BOARD OF SOUTH COVENTRY TOWNSHIP and Merribrook Associates.**

Commonwealth Court of Pennsylvania.

Argued March 12, 1999.
Decided May 17, 1999
Reargument Denied July 15, 1999.

Sean A. O'Neill, Malvern, for appellant.

Steven J. Proctor, Pottstown, for appellee.

Before DOYLE, J., SMITH, J., and MIRARCHI, Jr., Senior Judge.

SMITH, Judge.

The Board of Supervisors (Supervisors) of South Coventry Township (Township) appeals from an order of the Court of Common Pleas of Chester County that denied the Supervisors' appeal from an order of the Zoning Hearing Board of the Township (Board). The Board concluded that certain non-conforming structures erected by Merribrook Associates (Merribrook) were authorized by the Township's zoning ordinance. The Supervisors question whether the Board erred in applying a liberal construction of an ordinance provision that permits rebuilding of non-conforming structures to decrease or eliminate non-conformities, where non-conforming structures were destroyed by fire more than five years earlier, and another ordinance provision prohibits restoration of non-conforming structures destroyed by fire if the restoration commences more than one year after the fire.

I

Merribrook's land is in a Commercial–Industrial district, in which its use as a garden supply/nursery business is permitted. The district has a 100–foot front yard setback requirement. Formerly a pre-existing, large commercial building with a greenhouse attached came to within 25 feet of the roadway; these structures occupied approximately 3,700 square feet of the setback area. The structures were destroyed by fire in 1990; the commercial building was razed, but the concrete slab of the foundation remained. In 1994 and 1995 Merribrook erected, entirely within the front yard setback area, a shed roughly 15 by 30 feet, a greenhouse roughly 20 by 50 feet and a long narrow open porch roughly 7 feet by 70 feet in front. These structures occupy approximately 2,000 square feet of the setback, and the nearest approach to the road is now 65 feet. Two 20–foot by 50–foot greenhouses were erected beyond the setback at the same time. Merribrook did not apply for or receive a building permit for the construction of any of these structures. The cost to erect the structures was approximately $43,000; the cost to move them would be approximately $20,000, and the configuration of the lot would make it difficult to relocate them in compliance with the setback.

The Township Zoning Officer cited Merribrook in 1997. Merribrook applied to the Board for a variance or an interpreta-

tion of the zoning ordinance that would grant approval for greenhouses and an adjacent shed and porch built to replace a building destroyed by fire. Merribrook asserted that a variance should be granted because numerous other structures on the road were less than 100 feet from it, the structures had been in place for several years without complaint, and the applicant lacked resources to rebuild within one year of the fire. Following hearings, the Board issued a decision concluding that the variances requested were not de minimis and that Merribrook was not entitled to a variance by estoppel because no active acquiescence by Township officials had been demonstrated, citing *Mucy v. Fallowfield Township*, 147 Pa.Cmwlth. 644, 609 A.2d 591 (1992). Also, there was a lack of good faith on Merribrook's part because it knew or should have known that there was a question whether a building permit was required, and it should at least have made inquiry.

■■ Nevertheless, the Board concluded that Merribrook had demonstrated by a "narrow margin" that Section 1601(2)(d) of the ordinance should be applied. That section permits a non-conforming building to be rebuilt to eliminate or decrease the building's non-conformity, The Board noted that the area of the buildings within the setback had been reduced almost by half and that the closest point to the road had been reduced from 25 feet for the old structure to 65 feet for the new long porch and 75 feet to the shed and attached greenhouse. It stated that the visual appearance of the property had been enhanced, and it referred to the provision of Section 603.1 of the Pennsylvania Municipalities Planning Code (MCP), Act of July 31, 1968, P.L. 805, *as amended*, added by Section 48 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10603.1, that ambiguities within zoning ordinances

should be construed in favor of the property owner. On the Township's appeal the trial court affirmed, without receiving additional evidence.[1]

## II

The ordinance provisions at issue are found in Section 1601, relating to nonconforming buildings, structures and uses, and they provide:

2. *Extension.*

. . . .

d. A non-conforming building may be rebuilt only:

(1) To eliminate or decrease the building's nonconformity; or

(2) For the reasons stated in Paragraph 4 of this Section.

. . . .

4. *Restoration.*

A non-conforming building, or building occupied by a non-conforming use which is wholly or partially destroyed by fire, explosion, flood, or other phenomenon, or which has been legally condemned, may be reconstructed or repaired and/or used for the same non-conforming use, provided that such building reconstruction shall be commenced within one (1) year from the date the building was destroyed or condemned and shall be carried on without interruption.

The Township first notes that Section 1601(4) directly and unambiguously applies to the facts of this case. It asserts that even if the erection of new, pre-fabricated buildings without foundations could otherwise qualify as "restoration" of the concrete block structure that previously existed, the construction commenced long after the one-year period provided in Section 1601(4) and that, as the Board and Merri-

---

1. In a land use appeal, where the trial court took no additional evidence, this Court's review is limited to determining whether the zoning hearing board committed an abuse of discretion or an error of law. *Broujos v.*

*Carlisle Borough Council*, 685 A.2d 620 (Pa. Cmwlth.1996), *appeal denied*, —— Pa. ——, —— A.2d —— (No. 733 M.D. Alloc. Dkt.1996, filed September 8, 1997).

brook agree, the structures are not permitted under that Section.

The Township contends that the language of Section 1601(2)(d)(1) regarding the rebuilding of a structure is plain and is contrary to the Board's interpretation. If words or phrases are not defined in a statute or ordinance, they are to be construed according to the rules of grammar and according to their common and approved usage. Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a); *Borough of Pleasant Hills v. Zoning Board of Adjustment of Borough of Pleasant Hills,* 669 A.2d 428 (Pa. Cmwlth.1995). A structure may be "rebuilt" under Section 1601(2)(d)(1) to eliminate or decrease a building's non-conformity. The Township quotes a definition of "rebuild" that includes "to make extensive repairs to" and "to restore to a previous state...." [2] It argues that Merribrook's construction did not restore the original concrete block building and did not constitute making repairs. Further, the authorization in the ordinance to rebuild implies an existing building. The Township maintains that where the only building on the property was eradicated by fire years earlier, it defies logic to regard new structures made of different materials, of different size and location from the earlier structures, as a repair or other renovation to an existing building.

The Township contends that where a non-conforming structure is wholly destroyed, its non-conforming status is extinguished by operation of law, citing *Keystone Outdoor Advertising v. Department of Transportation,* 687 A.2d 47 (Pa. Cmwlth.1996), *appeal denied,* 548 Pa. 675, 698 A.2d 597 (1997), and *Korngold v. Zoning Board of Adjustment of the City of Philadelphia,* 147 Pa.Cmwlth. 93, 606 A.2d 1276 (1992). In *Keystone* a damaged wooden billboard structure was completely replaced with a steel structure a few feet away, contrary to applicable state regulations, and the removal of the original structure was held to be abandonment under the regulations. In *Korngold* a lessee that owned a billboard removed it. The removal was held to extinguish the use under the section of the zoning ordinance providing that where a structure or any portion thereof is demolished other than by act of God or condemnation, it was required to be rebuilt in dimensional conformity.

In addition, the Township argues that the Board and the trial court erred in applying a rule of liberal construction. In *Hanna v. Board of Adjustment of the Borough of Forest Hills,* 408 Pa. 306, 183 A.2d 539 (1962), the Supreme Court explained that a basic purpose of zoning is to promote orderly development; non-conforming uses are inconsistent with that goal and are tolerated to avoid imposing hardship and to avoid constitutional problems. The policy of the law, however, is to restrict such uses closely and to strictly construe ordinance provisions providing for their continuance, so that they may be reduced to conformity as speedily as is compatible with the law and the constitution. *See also Spahr–Alder Group v. Zoning Board of Adjustment of the City of Pittsburgh,* 135 Pa.Cmwlth. 561, 581 A.2d 1002 (1990).

The Township argues that Section 1601(2)(d)(1) and (4) may be read together without conflict if it is understood that the former refers to voluntary alterations to an existing structure at any time if the effect is to reduce non-conformity, whereas the latter applies only when a structure has been substantially eliminated by casualty, and it imposes a time bar within the

---

**2.** The Court notes that Webster's Third New International Dictionary 1893 (1993) defines "rebuild" as a transitive verb as "**1 a:** to make extensive repairs to including the replacement of missing parts: RECONSTRUCT ... **b:** to restore to a previous state or condition: RE–CREATE ... **2:** to make extensive changes in: REMODEL...." As an intransitive verb it is defined as "to build again or anew <bought the house with the intention of ing > **syn** see MEND[.]" *Id.*

owner must act. It contends also that special provisions of ordinances that are more restrictive control over general ones. *See, e.g., Appeal of Farrell,* 85 Pa.Cmwlth. 163, 481 A.2d 986 (1984) (holding that express exclusion of automobile sale, rental or storage from the definition of gas station use controlled over general provision permitting accessory uses). Section 1601(4) is both more particular and later in order than Section 1601(2)(d) and therefore should control.

In response Merribrook quotes a further definition of "rebuild" as "to make extensive changes in; : to build again" and adds the publisher's explanation that separating by letters or numbers reflects different senses of a word but does not evaluate them; it also quotes another definition that includes "[t]o build again." The American Heritage Dictionary of the English Language 1507 (3d ed.1992). Merribrook asserts that because the foundation of the original building survived the fire and rests beneath the new structures, Merribrook's construction may be viewed as "building them again," albeit farther from the road. The Township's interpretation of "rebuild," it contends, would define Section 1601(4) out of existence because that section addresses structures that have been "wholly" destroyed and therefore eradicated. If the Supervisors intended to establish requirements of an existing building, a time limitation and a restriction to non-casualty situations, Merribrook asserts, they could have said so expressly.

Merribrook argues that *Zeiders v. Zoning Hearing Board of Adjustment of West Hanover Township,* 39 Pa.Cmwlth. 645, 397 A.2d 20 (1979), is better authority than cases cited by the Township. In that case owners of a garden center commenced replacement of a deteriorated and damaged wooden "shade house" that was located within a setback with one made of metal tubing and plastic sheeting. The ordinance provided generally that non-conforming uses might be continued, altered, restored, reconstructed, changed or maintained, and it provided also that repairs or structural alterations might be made to a non-conforming building. The Court noted that when a nonconforming building has become so destroyed or deteriorated that complete reconstruction is necessary, a municipality may bar such reconstruction in a zoning ordinance, citing *Afso Builders, Inc. v. Zoning Hearing Board of the Township of Upper Darby,* 12 Pa.Cmwlth. 100, 314 A.2d 860 (1974). Such restrictions, however, must be specifically stated; in their absence an owner seeking to continue a valid non-conforming use must be permitted to do so. Merribrook notes also that the Court in *Zeiders* approved replacement of wooden structural pieces with metal poles and plastic sheeting as constituting a reasonable continuation of a non-conforming use, which is permitted unless the modernization is found to be injurious to the public.[3]

The Court agrees with the Township that the Board's interpretation of Section 1601 of the ordinance is not correct. First, the Board should not have ignored the general principle of interpreting restrictively ordinances that provide for the continuation of non-conforming uses, *Hanna,* and the Township's purpose as expressed in Section 1600 of the ordinance to encourage conformity. Although Merribrook cites 2 Robert A. Ryan, Pennsylvania Zoning Law and Practice § 7.1.2 (1982) for an opinion that Pennsylvania cases generally have accorded sympathetic and broad protection to activities that are nonconforming, the Court may not ignore the principle stated by the Supreme Court in *Hanna* and repeated frequently since that it is the policy of the law to reduce nonconforming uses to conformity.

**3.** Merribrook also asserts that where there is no ambiguity or irreconcilable conflict, and when the words of an ordinance are clear and free from doubt, the rules of statutory construction do not come into play. It disputes the Township's application of 1 Pa.C.S. § 1933, noting that its rule that the particular shall control over the general applies only where there is irreconcilable conflict.

██ The Court also agrees that, applying a proper narrow construction to Section 1601 of the ordinance, the only reasonable interpretation is that the governing body in Section 1601(4) intended for a non-conforming building destroyed by fire or other casualty to be rebuilt commencing within one year (and carried on without interruption) or not at all. If an owner does not secure authority to rebuild under this provision, the nonconforming structure ceases to exist, and later erection of one or more structures on or near the same location does not constitute "rebuilding" within the meaning of Section 1601(2)(d)(1). Contrary to Merribrook's argument, the Township's interpretation does not nullify Section 1601(4) by precluding rebuilding of anything that is wholly destroyed; rather, Section 1601(4) expressly provides for this circumstance but specifically restricts it. Merribrook's interpretation of Section 1601(2)(d), on the other hand, would essentially eviscerate Section 1601(4). An owner might rebuild a nonconforming structure years after its destruction, if the owner made sure to decrease the non-conformity to any extent. The Court concludes that the Board erred in determining that Section 1601(2)(d)(1) of the ordinance authorized Merribrook's erection of the buildings at issue here.

The Court also concludes, however, that this is not the end of the inquiry. As noted, the Board considered de minimis and estoppel rationales in denying Merribrook's original request for a variance; however, it did not determine whether Merribrook might be eligible for a variance on the merits. After the Board's decision, the Pennsylvania Supreme Court announced a major clarification of the law of dimensional as opposed to use variances. In *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43 (1998), a social services agency providing shelter and services to homeless women owned a building formerly occupied by a bank. Applying as a permitted "lodging house" use, the owner sought a vari-

ance from the amount of floor space that it would be required to provide under the zoning ordinance for the number of people it proposed to house. A neighbor protested, arguing that the owner had not met the strict standard of showing unnecessary hardship if the variance were denied.

██ The Supreme Court emphasized that the fact that only a dimensional variance was sought was crucial, and it concluded that the higher standard that must be met in use variance cases should not apply. To justify the grant of a dimensional variance, courts may consider "multiple factors, including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." *Hertzberg*, 554 Pa. at 264, 721 A.2d at 50. In the present case, the Board did not have the opportunity to evaluate the request under the standard announced in *Hertzberg*. Although the Court has rejected the Board's interpretation of Section 1601 of the ordinance, the Court believes that the better procedure in this case is to remand to the Board for it to consider the merits of Merribrook's variance request in the light of *Hertzberg*. Accordingly, the Court vacates the trial court's order and remands with instructions to remand to Board for further proceedings in the light of *Hertzberg*.

### ORDER

AND NOW, this 17th day of May, 1999, the order of the Court of Common Pleas of Chester County is vacated, and this case is remanded to the trial court with instructions to remand to the Zoning Hearing Board of South Coventry Township for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.