**8131 ROOSEVELT CORP. t/a "Pinups", Appellant,**

v.

**ZONING BOARD OF ADJUSTMENT OF THE CITY OF PHILADELPHIA and the City of Philadelphia.**

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 2001.

Decided Feb. 25, 2002.

Reargument Denied En Banc April 25, 2002.

Nicholas Poduslenko, Philadelphia, for appellant.

Cheryl L. Gaston, Philadelphia, for appellees.

William F. Kerr, Philadelphia, for intervenor, Councilwoman J. Krajewski.

Before SMITH–RIBNER, Judge, FRIEDMAN, Judge, JIULIANTE, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

In this case 8131 Roosevelt Corporation t/a "Pinups" (Pinups) appeals from an or-

der of the Court of Common Pleas of Philadelphia County that affirmed the order of the Zoning Board of Adjustment of the City of Philadelphia (Zoning Board) denying Pinups' application for the legalization of the adult cabaret and go-go style dancing use of its property. Pinups questions whether the cabaret is a constitutionally protected non-conforming use; whether the doctrines of res judicata or collateral estoppel require the grant of a variance; and whether Pinups was entitled to a variance by estoppel. It also questions whether laches bars the City of Philadelphia from denying permission to continue the use; whether a de novo hearing before the trial court was warranted; and whether the Zoning Board's decision to close the cabaret was supported by substantial evidence. The Zoning Board and the City dispute all of Pinups' arguments and, with Intervenor Councilwoman Joan L. Krajewski, contend that Pinups waived several of the theories that it now asserts by failing to raise them before the Zoning Board or by failing to appeal in 1996.

I

The Zoning Board found that in 1967 Nannette Sciolla acquired the subject property at 8131 Roosevelt Boulevard, which is a one-story building with an accessory parking lot in a C–2 Commercial district. The Sciolla family operated a rock and roll club on the premises. In 1969 they introduced go-go dancers to perform at the club on the weekends. In 1982 the business was sold, and it operated thereafter as a gentlemen's club. The current owner later acquired the business, and on August 14, 1996 the Zoning Board granted Pinups a two-year temporary variance to use the property as an adult cabaret within the meaning of Section 14–1605 of the City's Zoning Code (Zoning Code).[1] On January 14, 2000, Pinups applied to the City's Department of Licenses and Inspections (L&I) for a zoning or use registration permit for the use of the premises as an adult style cabaret and gentlemen's club as defined in Section 14–1605. L&I refused the application, noting that the use was an adult cabaret that was located within 500 feet of residential homes and/or apartments, that the Zoning Board had granted a temporary permit for the use but that the two-year temporary variance had expired and that the use now existing on the premises was in violation of the Zoning Code.

Pinups appealed from the permit refusal, and the Zoning Board conducted a hearing on the matter on April 4, 2000. At that hearing A.J. Sciolla, Jr. testified as to

---

1. Section 14–1605(2)(d) defines "cabaret" as: "An adult club, restaurant, theater, hall or similar place which may or may not serve alcoholic beverages and features topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators or similar entertainers exhibiting specified anatomical areas or performing specified sexual activities ...." Specified anatomical areas include: "(i) Less than completely and opaquely covered (.a) Human genitals, pubic region; (.b) Buttocks; and (.c) Female breasts below a point immediately above the top of the areola; and (ii) Human male genitals in a discernibly turgid state, even if completely and opaquely covered." Section 14–1605(2)(e). Specified sexual activities include: "(i) Human genitals in a state of sexual stimulation or arousal; (ii) Acts of human masturbation, sexual intercourse or sodomy; (iii) Fondling or other erotic touching of human genitals, pubic region, buttocks or female breasts." Section 14–1605(2)(f). Among the acts prohibited to cabarets and other regulated uses is the location of such a use within 500 feet of any residentially zoned district. In this case there is no dispute that the current use is within the definition of cabaret, that it is located within 500 feet of residential areas and that Section 14–1605 of the Code, which established the regulation of such uses, was enacted in 1977.

the history of the ownership of the property and the operation of the business. Charles Bowlan, a real estate broker who practices in the area, testified that the business was a go-go bar since the 1970s. On cross-examination he testified over objection that the property could be used for many commercial purposes. Steven M. Tartaglia testified that he was president of Pinups and had been vice-president and shareholder when the business was taken over in 1995. The former owner had a temporary adult cabaret license, and Pinups later received another use permit. Tartaglia testified that he had received very few complaints about the operation of the business. Tartaglia stated that he has excellent security, including hosts who check for identification and security cameras outside and in the parking lot. He acknowledged that certain pornographic pictures had been printed from Pinups' website, but he said that the women shown were not dancers and that the website was used to advertise hours of operation and the menu.

A representative of Councilwoman Krajewski's office submitted a petition with approximately 2700 signatures said to be of neighborhood residents opposed to Pinups' application. The owner of the abutting auto service and tire store complained of patrons driving the wrong way on a one-way street before entering Pinups' parking lot, of cars from Pinups parking in his lot and the moving of cement barriers, of beer bottles strewn about and evidence of sexual activity in the lot. Other protestants complained of noise from patrons leaving the property. A representative of the Philadelphia Planning Commission stated that they believed that the policy of the Zoning Board had been to grant tempo-rary variances to determine a use's compatibility with the surrounding neighborhood. In this case, the use had proved to be incompatible, and the Planning Commission recommended that variances not be granted.

■ The Zoning Board denied a variance, and in a supporting opinion it stated that the use was prohibited where it was located and that it could be permitted only if the criteria for granting a variance were met. The Zoning Board concluded that Pinups had failed to establish unnecessary hardship, in that the current operation as an adult cabaret without authority to do so was an illegal use. Further, Pinups had failed to establish that the adult cabaret would not have an adverse impact on the public health, safety and welfare, because the current operation had proved to be a nuisance to the area's residents. Without taking further evidence, the trial court affirmed, and Pinups has now appealed.[2]

## II

■ Pinups first contends that this Court should reverse because the cabaret was a prior non-conforming use. It notes that a legal non-conforming use is an activity or structure that predates a relevant zoning restriction. *Lantos v. Zoning Hearing Board of Haverford Township,* 153 Pa.Cmwlth. 591, 621 A.2d 1208 (1993). The owner of property to which a lawful non–conforming use has attached enjoys a vested property right that cannot be abrogated or destroyed unless it is a nuisance, it is abandoned or it is extinguished by eminent domain. *Pappas v. Zoning Board of Adjustment of the City of Philadelphia,* 527 Pa. 149, 589 A.2d 675 (1991). Pinups

**2.** Where the trial court did not receive additional evidence in a land use appeal, this Court's review is limited to determining whether the zoning hearing board committed an abuse of discretion or an error of law. *South Coventry Township Board of Supervisors v. Zoning Hearing Board of South Coventry Township,* 732 A.2d 12 (Pa.Cmwlth.1999).

asserts that the evidence at the April 2000 hearing established that an adult cabaret with go-go dancers has operated at the subject property since at least 1969, and it argues that the Zoning Board erred by failing to consider this issue in its opinion. The situation here is virtually identical, Pinups maintains, to that in *All in the Family Lounge v. Zoning Board of Adjustment of the City of Philadelphia*, 34 Phila. 537 (C.P.Pa.1997), where the trial court determined that a portion of the subject premises had been operated as a "go-go bar" continuously since 1971 with entertainment provided by live female dancers in a manner consistent with the activity regulated by Section 14–1605 of the Zoning Code.

■ The Zoning Board and City and also Councilwoman Krajewski echo a point made by the trial court in its opinion supporting affirmance of the Zoning Board. Section 14–104(4)(b) of the Zoning Code provides: "A non-conforming structure or use shall cease to be considered as such whenever it becomes the subject of a variance, granted by the Zoning Board of Adjustment or ordered by a Court, and its nonconforming status shall not be reinstated thereafter." Because the Zoning Board granted temporary variances for the operation in 1993 and in 1996, any claim of non-conforming use lapsed under Section 14–104(4)(b).[3] The Court agrees with trial court and the appellees that under Section 14–104(4)(b) any question of the status of the operation as a non-conforming use was precluded.

Pinups notes that in *Borough of Tunkhannock v. Wyoming County*, 96 Pa. Cmwlth. 243, 507 A.2d 438 (1986), the Court held that an earlier denial of a request for a variance to reconstruct a prison in a borough had no effect on the county's right to continue the use of the prison as a non-conforming use. Cases such as *Borough of Tunkhannock* do not apply because they did not involve the application of Section 14–104(4)(b) or a like provision. Zoning ordinances are presumed to be valid, and the burden of proving that an ordinance is unconstitutional is on the party challenging the ordinance. *Lantos.* Here Pinups has articulated no argument why the City lacks the authority to adopt Section 14–104(4)(b).

Assuming *arguendo* that the question of the status of Pinups' use of the property as a non-conforming use was available for determination, the Court agrees that Pinups failed to meet its burden to establish such a use. As quoted in n1 above, Section 14–1605(2)(d) of the Zoning Code defines the regulated use of "cabaret" as an adult club or similar place that features "go-go dancers" or similar entertainers "exhibiting specified anatomical areas or performing specified sexual activities." Neither Sciolla nor any other witness offered any evidence that the "go-go dancing" which began in 1969 involved revealing specified anatomical areas or engaging in specified sexual activity.

■ Pinups represents to the Court that Councilman James Kenney testified that a cabaret had operated on the property from 1959 or 1957:

**3.** Councilwoman Krajewski notes that in *Atlantic Richfield Co. v. Marshall Township Board of Supervisors*, 74 Pa.Cmwlth. 100, 459 A.2d 860 (1983), the municipality granted a request for variances to setback and curb cuts for the addition of a mini-market to a service station, conditioned upon the oil company's agreement to pay for any necessary improve-

ments at an intersection. When the oil company months later sought to challenge the condition by other means, the trial court quashed the appeal, and this Court affirmed, stating that if the company wished to appeal it should have timely done so after the original adjudication.

Even though the operation has operated since 1959 or '57—since 1982, there's been a trend—there's been an evolution from the, basically, a go-go bar where women dance with bathing suits, to the point of adult cabaret, where it is practically nude. And there is, although not direct sexual contact, there is contact with the patrons, couch dancing, table dancing, all those kinds of things you may read about in the newspaper in advertising these operations.

N.T., July 30, 1996, at pp. 12–13. As the Zoning Board and City emphasize, it must be shown that a non-conforming use came into existence legally and predated the change in zoning that rendered it nonconforming. *Scalise v. Zoning Hearing Board of Borough of West Mifflin*, 756 A.2d 163 (Pa.Cmwlth.2000). Councilwoman Krajewski notes, and the Court agrees, that this record is devoid of evidence that the entertainment provided by the go-go dancers in 1969 would have rendered it a cabaret under Section 14–1605. Pinups' cabaret use therefore could not be afforded non-conforming use status because it failed to meet its burden.

### III

Pinups raises several other theories on appeal. It contends that the doctrines of res judicata and/or collateral estoppel require the grant of a variance. Pinups cites *Tire America, Inc. v. Zoning Hearing Board of Manchester Township*, 159 Pa. Cmwlth. 265, 632 A.2d 1076 (1993), for the proposition that res judicata controls a zoning case where there is an identity of the things sued for, an identity of the causes of action, an identity of the persons or parties to the action and an identity of the quality in the persons for or against whom the claim is made. It asserts that these requirements have been met in regard to the Zoning Board's previous determinations that Pinups would suffer an un-

necessary hardship if it were prevented from operating the cabaret and that the operation did not have an adverse impact on the neighborhood. In the alternative Pinups asserts that it is entitled to a variance by estoppel. Pinups also asserts that the Court should reverse because the City is guilty of laches.

The Zoning Board and City and also Councilwoman Krajewski assert that Pinups failed to raise res judicata, estoppel and laches at the April 2000 hearing before the Zoning Board, and they argue that these issues are therefore waived. In *Teazers, Inc. v. Zoning Board of Adjustment of the City of Philadelphia*, 682 A.2d 856 (Pa.Cmwlth.1996), the Court noted that where a full and complete record was made before a zoning hearing board, a party in an appeal to a trial court may not raise issues not raised before the board. Pinups did not limit itself to any one theory. At the hearing Pinups referred to previous hearings and decisions of the Zoning Board, and the Zoning Board made express reference to the 1996 proceedings in its 2000 decision. In addition, Pinups notes that the Zoning Board did not entertain oral argument at the close of testimony. Pinups had elicited some evidence relating to each of those theories, and the Court cannot be sure that Pinups would not have argued them expressly had it been afforded the opportunity. In any event, Pinups would not be entitled to relief on these grounds.

■ Regarding the preclusive effect of the 1996 determinations of unnecessary hardship and lack of adverse neighborhood impact, the Zoning Board and City and also Councilwoman Krajewski cite *Omnivest v. Stewartstown Borough Zoning Hearing Board*, 163 Pa.Cmwlth. 415, 641 A.2d 648 (1994). There owners were granted a variance to build on a panhandle

lot that did not have required frontage at the setback line, but they did not secure a building permit or use certificate within six months, and the variance expired under a provision of the zoning ordinance. When the owners claimed res judicata in a later application, the Court noted the principle that res judicata is applied sparingly in zoning matters, citing *City of Pittsburgh v. Zoning Board of Adjustment of City of Pittsburgh*, 522 Pa. 44, 559 A.2d 896 (1989). The Court held that a subsequent application, even one seeking a variance for the same parcel, was a new application that must satisfy all of the required elements for a variance. The Court notes that the two-year temporary variances issued in 1993 and again in 1996 did not purport to establish a permanent determination of unnecessary hardship or of lack of adverse impact on the neighborhood. Each ruling was limited to a specified period.

■ The Court indicated in *Schuylkill Township v. Overstreet*, 107 Pa.Cmwlth. 492, 529 A.2d 551 (1987), that the prerequisites to receiving the benefit of an estoppel against a municipality are municipal failure to enforce the law over a long period or some form of active acquiescence in an illegal use; good faith throughout the proceedings on the part of the property owner; and innocent reliance evidenced by substantial expenditures. As the Zoning Board expressly found, Pinups continued to operate the adult cabaret on the property after the expiration of the two-year temporary permit issued in 1996 even though Pinups was fully aware that a new permit was required to operate the club legally. Such conduct necessarily precludes a determination of good faith by the operator.

■ As for laches, Pinups compares this case to *Township of Haverford v. Spica*, 16 Pa.Cmwlth. 326, 328 A.2d 878 (1974), where the municipality issued a building permit for a commercial structure located in a residential district and then took no further action for thirty-six years until it denied an application to use the space for a professional office. In *Appeal of Heidorn*, 412 Pa. 570, 195 A.2d 349 (1963), Pinups notes, where a township waited ten years before objecting to an awning and stoop that projected into a setback area, the Supreme Court held that the township was guilty of laches and that the official neglect could not be ignored. The Zoning Board did not acquiesce in Pinups' illegal use of the property since 1982 but rather rendered the use legal for specified periods through the issuance of temporary variances. The Court does not regard the City's relatively brief period of inaction after expiration of the 1996 temporary variance as being equivalent to the municipal acquiescence in *Township of Haverford* or in *Appeal of Heidorn*.

IV

■ Pinups also argues that the trial court wrongly denied Pinups' request for a de novo hearing. It cites *Reformed Seventh Day Adventist Church, Inc. v. Philadelphia Zoning Board of Adjustment*, 127 Pa.Cmwlth. 445, 561 A.2d 1324 (1989), where this Court noted that a common pleas court is warranted in taking additional testimony at a de novo hearing on a municipal zoning board appeal only when the party making the request demonstrates that the record is incomplete because it was denied an opportunity to be fully heard or that the board excluded relevant testimony. Pinups asserts that it had no opportunity to examine the pre 1996 zoning file before the April 2000 hearing because it was in the possession of the Federal Bureau of Investigation in connection with an investigation of a former L&I official. However, former zoning applica-

tions demonstrating the use of the property as a bar would not have aided Pinups' case, and matters in the file relating to signs did not form the basis for the Zoning Board's decision.

■ Finally, Pinups asserts that the evidence submitted at the April 2000 hearing was not sufficient to deny Pinups its continued use of the property for cabaret entertainment. It argues that the Zoning Board was swayed by the invective of vocal protesters. Pinups notes that a zoning hearing board abuses its discretion if it makes findings of fact not supported by substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Ass'n v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983). Pinups expresses its view that the evidence of adverse effects presented to the Zoning Board in 2000 was no different from that presented in 1996, when the Zoning Board declined to find an adverse impact to public health, safety and welfare. It notes that certain adverse witnesses who testified had not complained to the police or to the manager of the cabaret.

The Court observes that Pinups' argument misperceives the status of its current use of the property. As the Zoning Board determined, after the expiration of the 1996 temporary variance the operation of the cabaret was illegal. In the absence of a valid claim of non-conforming use or a variance, Pinups had no authority for continued operation of the cabaret in violation of the provisions of Section 14–1605 of the Zoning Code. To qualify for a variance, the burden was on Pinups to establish that unnecessary hardship would result if the

variance were denied and that the proposed use would not be contrary to the public interest. *Valley View Civic Ass'n.* Although Pinups belittles the evidence of adverse impact that was presented, the Zoning Board was entitled to credit the testimony concerning regular improper driving by Pinups' patrons and problems regarding trash, noise and public decency.[4] Accordingly, the Court affirms the order of the trial court.

### ORDER

AND NOW, this 25th day of February, 2002, the order of the Court of Common Pleas of Philadelphia County affirming the order of the Zoning Board of Adjustment of the City of Philadelphia is affirmed.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. I do not agree with the following conclusions reached by the majority: (1) section 14–104(4)(b) of the Philadelphia Code (Code) precluded the Zoning Board of Adjustment of the City of Philadelphia (Zoning Board) from considering whether the cabaret operated by 8131 Roosevelt Corp., t/a "Pinups" (Pinups) is a lawful pre-existing non-conforming use; (2) Pinups failed to present substantial evidence to show that its cabaret is a lawful pre-existing non-conforming use; (3) Pinups is not entitled to estoppel relief because it failed to act in good faith throughout the proceedings; and (4) the City of Philadelphia (City) is not guilty of laches because it did not acquiesce to Pinups' operation of a cabaret. Thus, unlike the majority, I would reverse.

4. In its reply briefs Pinups also raises for the first time an argument that semi-nude dancing is protected as a form of free speech under the federal and state constitutions and that application of Section 14–1605 in this

case will infringe its constitutional rights. This contention was not raised at any earlier stage of these proceedings, and it is waived. *Teazers, Inc.*

## I.  Non–Conforming Use

The majority concludes that the Zoning Board did not err by failing to address whether Pinups' cabaret is a lawful pre-existing non-conforming use because, under section 14–104(4)(b) of the Code, Pinups ceased to be considered a lawful pre-existing non-conforming use after the Zoning Board granted a *temporary* variance. (Majority op. at 968.) However, I believe that this holding ignores the plain language of section 14–104(4)(b) of the Code and, moreover, renders section 14–104(4)(b) of the Code unconstitutional.

### A.  Plain Language

Section 14–104(4)(b) of the Code states that "[a] non-conforming structure or use shall cease to be considered as such whenever it becomes the subject of a variance, granted by the Zoning Board of Adjustment or ordered by a Court, and its non-conforming status shall not be reinstated thereafter." The word "variance" and the phrase "non-conforming use" are technical terms, and we must construe technical words and phrases according to their peculiar and appropriate meaning or definition.[1]

A variance is "[p]ermission to depart from the literal requirements of a zoning ordinance by virtue of unique hardship due to special circumstances regarding [a] person's property. It is in the nature of a waiver. ...." Black's Law Dictionary 1553 (6th ed.1990). A *temporary* variance is not the same as a variance because a temporary variance only applies in transitional situations and does not provide the same remedy as a variance. *See* Robert S. Ryan, Pennsylvania Zoning Law and Practice § 6.2.15 (2001).

A non-conforming use is a "use which does not comply with present zoning provisions but which existed lawfully ... prior to the enactment of the zoning provision." Black's Law Dictionary 1051 (6th ed.1990). "A lawful nonconforming use establishes in the property owner a vested property right which cannot be abrogated or destroyed, unless it is a nuisance, it is abandoned, or it is extinguished by eminent domain." *PA Northwestern Distributors, Inc. v. Zoning Hearing Board of Township of Moon*, 526 Pa. 186, 192, 584 A.2d 1372, 1375 (1991) (*Moon*).

Because a lawful non-conforming use cannot be destroyed unless it is a nuisance, it is abandoned or it is extinguished by eminent domain, we cannot interpret section 14–104(4)(b) of the Code so that the mere grant of a variance destroys a lawful non-conforming use. Of course, if the City grants a *permanent* variance for a particular non-conforming use, that use continues and is *not* destroyed. The same cannot be said of a *temporary* variance because, when a temporary variance expires, it might not be renewed. Thus, section 14–104(4)(b) of the Code must be construed to mean that a non-conforming use ceases to be considered as such whenever it becomes the subject of a *permanent* variance. Because the Zoning Board granted Pinups a *temporary* variance, section 14–104(4)(b) of the Code does not apply.

### B.  Constitutional Considerations

*If* the word "variance" in section 14–104(4)(b) of the Code were to include a *temporary* variance, as the majority holds, then section 14–104(4)(b) of the Code would be unconstitutional.[2]

---

1.  Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a); *Heck v. Zoning Hearing Board for Harvey's Lake Borough,* 39 Pa.Cmwlth. 570, 397 A.2d 15 (1979)

(stating that the rules of statutory construction apply to both statutes and ordinances).

2.  In ascertaining the meaning of a zoning ordinance, we presume that the local authori-

In *Moon*, a township attempted to regulate adult commercial enterprises by enacting a zoning ordinance that restricted the location of such businesses. For example, the ordinance banned adult commercial enterprises within 1,000 feet of a residential zone. The ordinance gave nonconforming entities a ninety-day grace period to come into compliance with the ordinance; those failing to comply within ninety days were required to close. One entity, an adult bookstore that was a lawful pre-existing non-conforming use, challenged the validity of the ordinance. Our supreme court held that any zoning ordinance that requires the amortization and discontinuance of a lawful pre-existing non-conforming use is confiscatory and violative of the constitution as a taking of property without just compensation. The court stated that no governmental body has the right to substantially destroy the lawful use of property without paying just compensation for it. Thus, the court found the ordinance unconstitutional. *Moon*.

Like the township in *Moon*, the City here has attempted to regulate adult businesses. Similar to the provision mentioned above in *Moon*, section 14–1605(4)(b) of the Code bans adult businesses within 500 feet of a residential zone. Pinups cannot meet this requirement. Instead of a ninety-day grace period, the City gave Pinups a two-year grace period through the issuance of a temporary variance in 1993. Although the City gave Pinups a second two-year grace period in 1996,[3] the City ultimately ignored Pinups'

claim of a lawful pre-existing non-conforming use and ordered Pinups to cease operations. The City believed, like the majority, that, under section 14–104(4)(b), the temporary variances destroyed any lawful pre-existing non-conforming use. However, as our supreme court ruled in *Moon*, a governmental body may not use a zoning ordinance to destroy a lawful pre-existing non-conforming use of property without just compensation. *Moon*. Thus, if the City and the majority have properly construed section 14–104(4)(b) of the Code to allow for the destruction of Pinups' property right to continue its lawful pre-existing non-conforming use, then that Code provision is unconstitutional.

Because I presume, as I must, that the City did not intend to violate the Constitution in enacting the Code, I conclude that the City's issuance of a temporary variance does *not* destroy a lawful pre-existing non-conforming use under section 14–104(4)(b) of the Code.

## II. Substantial Evidence

The majority states that, even if the pre-existing non-conforming use issue was available for determination, the "record is devoid of evidence that the entertainment provided by the go-go dancers in 1969 would have rendered it a cabaret under Section 14–1605 [of the Code]." (Majority op. at 968.) I disagree.

Section 14–1605 of the Code was enacted in 1977. Under section 14–1605(2)(d) of the Code, a restaurant that features go-go

---

ties did not intend to violate the Constitution. Section 1922(3) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(3); *Heck*.

**3.** I note that "a zoning board is not a regulatory agency and [the] use of temporary variances as a device to achieve continuing supervision [of a use] is an unwarranted extension of the board's function." Robert S. Ryan,

Pennsylvania Zoning Law and Practice § 6.2.15 (2001). Here, the Zoning Board issued temporary variances to determine a use's compatibility with the surrounding neighborhood. (R.R. at 151a.) Thus, it appears to me that the Zoning Board used temporary variances improperly to achieve continuing supervision over adult businesses.

dancers exhibiting specified anatomical areas is a "cabaret." The specified anatomical areas include less than completely covered buttocks. *See* Section 14–1605(2)(e) of the Code. The record in this case indicates that, prior to enactment of the Code in 1977, the property was used as a restaurant that featured go-go dancers wearing bathing suits. (R.R. at 21a–22a.) Certainly, a reasonable mind could conclude based on ordinary experience and common sense that the bathing suits of the 1960's and 1970's did not completely cover the buttocks of go-go dancers, especially while they were dancing. Therefore, I conclude that the record contains substantial evidence to support a finding that there was a lawful pre-existing "cabaret" on the property before enactment of the Code in 1977.

### III. Estoppel

The majority states that Pinups is not entitled to a variance by estoppel because Pinups did not act in good faith throughout the proceedings. In support of this statement, the majority asserts that Pinups operated its cabaret illegally after the second two-year temporary variance expired. (Majority op. at 969.) However, if the cabaret was a lawful pre-existing non-conforming use, which the temporary variance could not destroy, then Pinups was *not* operating the cabaret illegally when the second temporary variance expired.

### IV. Laches

The majority states that the City is not guilty of laches because the City did not acquiesce in Pinups' use of the property after 1982. (Majority op. at 969.) I disagree.

■ In *In re Heidorn,* 412 Pa. 570, 195 A.2d 349 (1963), our supreme court held

that a township is guilty of laches where (1) an ordinance violation is not concealed from public view, (2) the township does not object to the violation for ten years and (3) the township has no valid excuse for its indifference. Here, Pinups began operating as a cabaret in 1982. The fact that the cabaret was within 500 feet of a residential zone was not concealed from public view. Yet, the City did *nothing* about the location of Pinups until 1993, when it issued the first temporary variance.[4] For *eleven* years, then, the City did not object to the fact that Pinups was within 500 feet of a residential zone, and the City has offered no excuse for its indifference to the violation. Under *Heidorn,* the City is guilty of laches.

---

4. Thus, even when the City finally took action against the cabaret in 1993, the City allowed Pinups to continue to operate within 500 feet

of a residential area pursuant to a temporary variance.