IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Take Back Your : 
Neighborhood (RCO), : 
       : 
            Appellant : 
       : 
           v. : No. 141 C.D. 2017
       : Submitted: October 17, 2017
6600 Bustleton Associates; City of : 
Philadelphia; Philadelphia Zoning : 
Board of Adjustment : 


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                             FILED: November 13, 2017


        Take Back Your Neighborhood (RCO) (Objector) appeals the order of the Philadelphia County Court of Common Pleas (trial court) denying its appeal and affirming the decision of the City of Philadelphia's (City) Zoning Board of Adjustment (Zoning Board) that granted, with provisos, the application of 6600 Bustleton Associates (Landowner) for a special exception[1] to operate a personal care home at 6600 Bustleton Avenue. We affirm.

---

[1] "A special exception is not an exception to the zoning ordinance, but rather a use to which the applicant is entitled unless the zoning board determines, according to the standards set forth in the ordinance, that the proposed use would adversely affect the community." *Blancett-Maddock v. City of Pittsburgh Zoning Board of Adjustment*, 640 A.2d 498, 500-01 (Pa. Cmwlth. 1994), *appeal denied*, 655 A.2d 992 (Pa. 1995) (citation omitted).

Landowner's property is located at the corner of Bustleton Avenue and Magee Street in the City's RSA-5 Residential Single-Family Attached zoning district.[2] There is a 25,000-foot, two-story detached structure on the property that was formerly used as a charter school. The site is vacant and includes off-street parking for 18 cars.

On December 4, 2015, Landowner submitted an application for a zoning/use registration permit with the City's Department of Licenses and Inspection (L&I) to operate a personal care home on the property.[3] On December 14, 2015, L&I issued a Notice of Referral, referring the matter to the Board because the proposed personal care use requires special exception approval in the RSA-5

---

[2] Section 14-401(1)(c) of the City's Zoning Code states:

> The RSA, Residential Single-Family Attached districts are primarily intended to accommodate attached and semi-detached houses on individual lots, but may be applied in areas characterized by a mix of housing types, including detached houses. The districts are also intended to provide a density transition between [the Residential Single-Family Detached] districts and [the Residential Multi-Family] districts. The Zoning Code includes five RSA districts that are differentiated primarily on the basis of minimum lot area requirements.

[3] Section 14-602(1) of the Zoning Code provides that the "personal care home" use is a use permitted by special exception in the RSA-5 zoning district. Section 14-601(2)(b)(.1) defines "personal care home" as follows:

> Any premises in which food, shelter, and personal assistance or supervision are provided for a period exceeding 24 hours for four or more adults who are not relative of the operator, who do not require the services in or of a licensed long-term care facility, but who do require assistance or supervision in such matters as dressing, bathing, diet, financial management, evacuation from the residence in the event of an emergency, or medication prescribed for self-administration.

zoning district. Reproduced Record (R.R) at 84a.[4] The Notice noted for the Zoning Board that the Zoning Board had previously granted a special exception for an education facility on the property on August 7, 2013, and that "[p]er §14-603(11) [of the Zoning Code], where the Pennsylvania Department of [Human Services] requires, personal care homes must comply with all applicable regulations of 55 Pa. Code Chapter 2600." *Id.*

Landowner thereafter filed an application for a special exception with the Zoning Board.[5] At the Board hearing, Landowner's counsel, Vern Anastasio,

---

[4] Section 14-303(7)(b) states that "[o]nce a use application has been filed with L&I, and L&I confirms that the use is subject to the special exception approval procedures of this §14-303(7) (Special Exception Approval) and L&I provides a referral to the applicant, the applicant has 30 days to file an appeal to the Zoning Board for special exception approval."

[5] Section 14-303(7)(e) of the City's Zoning Code states:

(e) **Criteria for Review and Action by the Zoning Board.**

The Zoning Board must approve, or approve with conditions, the application for a special exception if it determines that the criteria in §14-303(7)(e)(.1) and §14-303(7)(e)(.2) below have been met, unless the Zoning Board finds that the objectors, if any, satisfied the criteria in §14-303(7)(e)(.3). The Zoning Board shall, in writing, set forth each required finding for each special exception that is granted, set forth each finding that is not satisfied for each special exception that is denied, and to the extent that a specific finding is not relevant to the decision, shall so state.

(.1) **Specific Conditions of Use.**

The applicant shall have the initial duty of presenting evidence, and the burden of proof, that the proposed use meets the definition for a use permitted by special exception, that all dimensional standards are satisfied, and that the application complies with all the criteria and meets all the conditions applicable to the proposed use, including all

3

applicable use-specific standards in §14-603 (Use-Specific Standards).

(.2) **Specific Detrimental Impacts on the Neighborhood.**

The applicant shall have the initial duty of presenting objective evidence, and the burden of proof, that the grant of a special exception will not cause the following specific detrimental impacts to the neighborhood beyond that which normally might be expected from the proposed use:

> (.a) Congestion in the public streets or transportation systems;
>
> (.b) Overcrowding the land;
>
> (.c) Impairing an adequate supply of light and air to adjacent property;
>
> (.d) Burdening water, sewer, school, park, or other public facilities;
>
> (.e) Impairing or permanently injuring the use of adjacent conforming properties;
>
> (.f) Endangering the public health or safety by fire or other means; or
>
> (.g) Inconsistency with the Comprehensive Plan of the City.

(.3) **General Detrimental Impacts on the Neighborhood.**

Once the applicant meets such initial duty and burden of proof, the objectors, if any, shall have the duty of presenting objective evidence, and the burden of proof, that the proposed use is substantially likely to cause a detrimental impact on the health, safety, and welfare of the neighborhood exceeding that which normally might be expected from the proposed use. The objectors also may present evidence, and have the burden of proof, that the

4

stated that the block on which the property is located includes a number of institutional and non-residential uses, including four churches and a gas station. R.R. at 59a. He explained that the facility would house "single individual women, who had . . . dependency issues, went through the detox program, are completely clean, and are coming into a personal care facility for counseling, for life skills training, to assist with job employment." *Id.* at 32a. He indicated that the facility would not accept "any applicant with a criminal background, with a violent background, even a PFA," and that a resident would only remain at the facility for an average of 90 days. *Id.* at 33a, 37a. He stated that there would initially be 25 residents "phasing up to, within 12 months, 35," but that "[t]he Commonwealth would set it to somewhere in the upper 40s." *Id.* at 32a.

Anastasio stated that three community meetings were held prior to the Zoning Board hearing and that Landowner proposed additional security measures to address the "health and safety" concerns raised at those meetings. R.R. at 36a. He described these additional measures as including "around-the-clock security personnel, a security system and surveillance inside and out, [and] security locked doors because there are several doors." *Id.* He stated that the residents would be subject to a 10:30 p.m. curfew and would only be permitted to leave the facility for scheduled appointments. *Id.* at 39a. He described the prior use of the property as "a charter school with hundreds of students and staff," and asserted that the impact of the proposed use on parking, congestion, and public utilities would be "drastically less" than that of prior uses. *Id.* at 35a.

Landowner's representative, Jeffrey Fuchs, testified regarding the proposed use, explaining that it would be a "non-medical" "program facility" that

proposed use fails to conform with the purpose, spirit, and intent of this Zoning Code.

5

would house female residents coming directly out of detox and those with other mental health issues, including eating disorders and depression. R.R. at 41a, 43a. He stated that there would be group counseling and instruction in life skills such as cooking and cleaning offered to the residents. *Id.* at 41a. He testified that the curfew would be strictly enforced and that there would be a zero tolerance policy regarding drug use. *Id.* at 39a, 43a. He explained that a resident could only go out for an appointment and that the resident would be tested for drugs upon her return to the facility. *Id.* at 39a-40a.

Both Objector and the Oxford Circle Civic Association appeared before the Zoning Board in opposition to the application. Robert Rudinsky, Objector's representative, acknowledged that "there is a need for this type of facility," but expressed Objector's opposition to the application as, "[I]s it the best use of the building[?] The building lends itself to quite a few options, as a community center, [or] as a school" because "[i]t's been a school in the past." R.R. at 46a. He also stated that the community had "safety concerns" and "parking concerns" regarding the proposed use. *Id.* at 52a. However, Rudinsky did not raise any other issue regarding Landowner's compliance with any other general or specific requirement of the Zoning Code for the grant of a special exception.[6]

---

[6] Rudinsky expressed Objector's objection to the application as follows:

> [W]hat he's trying to do we think is absolutely great vision. We're not – without a doubt, we're not questioning the vision of the facility that he's trying to create. We know there is a need for this type of facility. We're clearly aware of it. What the concern is, is it the best use of the building. The building lends itself to quite a few options, as a community center, as a school. It's been a school in the past.

Now, due to Mr. Fuchs' credit, he wasn't aware that after the last meeting we have done some work on our end to try and reach out and find other tenants for his building, some – things that are more in the nature of a school, a community-related issue. But it's not an easy task. There is nothing that's going to be easy about this. We certainly feel that this gentleman should rent this building.

* * *

I went to the initial site visit, and then we had a leadership meeting and a general meeting, so three meetings. At the first meeting, we did address certain concerns. I went back to the neighborhood. The leadership team was completely opposed to the project.

Again, even after that meeting I tried to yield to my leadership team saying that the gentleman needs to rent the building, what can we do. We reached out to the mayor's office. We reached out to a couple [of] folks that are looking for buildings. Again, this is not an easy task.

Also, we weren't aware of the urgency until Mr. Fuchs brought it to our attention that he's looking for a tenant. This, again, is not an easy task. We do have some interest. There is not a guarantee. The problem that we're having right now is a very short period of time, as you know there [are] political elections going on in the city, and it's just hard to get the momentum moving as fast as Jeff would like us to get it moving.

Again, we're not downplaying the vision of the facility. What we're saying is, in this neighborhood, would it be the best function. It's next to a playground. It's – we don't have any vacant buildings that we can turn into schools. This is set up as a school as it is now.

* * *

There was [sic] obviously safety concerns, parking concerns. There is – the other concern, the bottom line is that we didn't feel that we could find him a suitable applicant. I, myself, have

On March 8, 2016, the Zoning Board issued a written decision granting Landowner's special exception application subject to the following conditions: (1) a permit must be obtained from L&I within one year of the decision; (2) all construction must be in accordance with plans approved by the Zoning Board; (3) a new application and a new public hearing will be required for the failure to comply with the foregoing conditions; (4) a maximum of 35 residents; and (5) a two-year temporary approval. R.R. at 1a.[7]

___

> personally tried to bring applicants into the building. And the price has been difficult.

R.R. at 46a-49a, 52a.

[7] With respect to the specific criteria for the grant of a special exception in Section 14-303(7)(e)(.2) of the City's Zoning Code, the Zoning Board set forth the following conclusions:

> i. The Board concludes that the availability of on-site parking, the relatively low number of residents, and the limited circumstances under which residents will be permitted to leave the facility or visitors will be permitted to enter the Property are factors sufficient to establish that the proposed facility will not increase congestion in the public streets or transportation systems beyond what would normally be expected from a personal care home. By contrast, Objectors offered no objective evidence to support a finding that the use would increase congestion in the public streets or transportation systems.

> ii. The Board concludes that the size of the property, the floor area of the existing building and the relatively low number of residents (particularly in comparison to the number of students using the site under the prior use) are factors sufficient to establish that the use will not overcrowd the land. Objectors presented no evidence to contradict this conclusion.

> iii. The Board concludes that evidence going to the specific nature of the proposed use, including security measures to be taken by [Landowner], and the Property's use history, was sufficient to

On April 4, 2016, Objector appealed the Zoning Board's decision to the trial court. On appeal, Objector argued: (1) the Zoning Board erred in granting the special exception because Landowner did not present any evidence demonstrating compliance with Section 14-303(7)(e)(.1) incorporating, through Section 14-603(11), the specific standards of various Pennsylvania Department of Human Services regulations for personal care homes contained in 55 Pa. Code §§2600.1-

establish that the proposed personal care home will not impair or permanently injure the use of adjacent conforming properties.

iv. The Board concludes that the absence of any proposed construction or alterations to the existing building is sufficient to establish that the proposed use will not impair an adequate supply of light and air to the surrounding properties.

v. The Board concludes that the evidence of record going to security measures to be taken, limits on the number of residents, and operating procedures for the proposed personal care home are sufficient to establish that the proposed facility will not burden public facilities or endanger the public health or safety.

vi. The Board finally concludes that the Planning Commission's conditional support for the project, as well as the Zoning Code's classification of the [proposed use] as a conditionally permitted use, was sufficient to establish that the proposed use is consistent with the Comprehensive Plan. With regard to this criteria, the Board notes that the Planning Commission erred in referring to the [request] as a variance.

13. In conclusion, the Board is persuaded that [Landowner] met its burden of establishing that the proposed use satisfies the Code's criteria for [the] grant of a special exception and that the Objectors failed to establish that the use would have a detrimental impact on the public health, safety or welfare beyond that which would normally be expected from such a use.

R.R. at 7a-8a.

9

2600.270; (2) the Zoning Board erred in determining that Landowner met its burden of showing that the proposed use does not cause the specific detrimental impacts outlined in Section 14-303(7)(e)(.2); (3) the Zoning Board erred in granting the special exception because Landowner failed to meet the landscaping requirements of Section 14-803(5)(e)(.1)[8] and the bicycle parking requirements of Section 14-804, providing mandatory minimum bicycle parking ratios and standards; and (4) the Zoning Board abused its discretion by acting as a regulatory agency by issuing a temporary special exception. R.R. at 210a-224a.

The trial court concluded that "substantial evidence supports the [Zoning Board]'s decision that [Landowner] met all the requirements for a special exception" under Section 14-303(7)(e)(.2); that Objector "presented no objective evidence of specific safety concerns, particularly in light of the high level of security proposed for the facility"; and that Objector "also failed to present any evidence regarding the claimed parking issues" because "the evidence showed that there would be fewer cars entering and exiting the property, given that the 35 women who will live there are allowed to leave only under supervision and visitors are restricted to Sundays," which "constitutes much less activity than when a school with hundreds of students and staff operated at the property." R.R. at 11a, 12a (footnote omitted). With respect to Objector's other claims, raised for the first time on appeal, the trial court "did not consider these issues because an appellant's arguments on appeal are limited to those that were raised at the hearing." *Id.* at 12a n.1 (citation omitted).

---

[8] Section 14-803(5)(e)(.1) of the Zoning Code states, in relevant part, that "[a] minimum of 10% of the interior surface parking lot in all districts and off-street loading areas in all districts . . . calculated as the total of area in all surface parking spaces and surface drive aisles, shall be planted with landscape."

Objector then filed the instant appeal,[9] again raising the same issues that were first raised on appeal to the trial court. Initially, we note that Objector's assertions that Landowner did not meet its burden under Section 14-303(7)(e)(.1) and (.2) are based upon provisions of the Zoning Code and Pennsylvania Department of Human Services regulations that were not cited or argued before the Board.[10] Likewise, Objector's assertions that Landowner failed to meet the landscaping requirements of Section 14-803(5)(e)(.1) and the bicycle parking requirements of Section 14-804 were not cited or argued before the Board. As this Court has explained:

> Objector raised for the first time on appeal to the trial court and on appeal to this Court, the issue of whether the proposed development fails to comply with the formal

---

[9] Where the trial court takes no additional evidence, our scope of review of the Zoning Board's grant of a special exception is limited to determining whether the Zoning Board abused its discretion, committed an error of law, or made findings of fact not supported by substantial evidence. *Pittsburgh Trust for Cultural Resources v. Zoning Board of Adjustment*, 604 A.2d 298, 304 (Pa. Cmwlth. 1992), *appeal denied*, 645 A.2d 1320 (Pa. 1994).

[10] Specifically, Objector asserts that the Board erred in failing to consider, and there is not substantial evidence demonstrating compliance with, the following specific requirements incorporated through Section 14-603(11) of the Zoning Code: (1) 55 Pa. Code §2600.4 (defining "personal care services," "activities of daily living," and "instrumental activities of daily living"); (2) 55 Pa. Code §2600.42 (outlining "specific rights" of personal home care residents); (3) 55 Pa. Code §2600.43 (prohibiting the deprivation of any of the enumerated rights); (4) 55 Pa. Code §2600.98 (requiring at least one furnished living room or lounge area for residents, their families, and visitors); (5) 55 Pa. Code §2600.101 (requiring that each bedroom have a window with direct exposure to natural light); (6) 55 Pa. Code §2600.103 (requiring access to an operable kitchen with a refrigerator, sink, stove, oven, cooking equipment, and cabinets or shelves for storage); (7) 55 Pa. Code §2600.104 (requiring a dining area equipped with tables and chairs sufficient to accommodate the maximum number of residents); (8) 55 Pa. Code §2600.161 (requiring that meals meet the recommended dietary allowances established by the United States Department of Agriculture); and (9) 55 Pa. Code §2600.122 (requiring two independent and accessible exits on each floor arranged to reduce the possibility that they would be blocked during an emergency).

requirements of a subdivision pursuant to the [Zoning Code]. However, an issue must be raised before the Board in order to preserve it for appeal. *See* Pa. R.A.P. 1551 (No question shall be heard or considered by the Court which was not raised before the government unit.). By raising this issue for the first time with the trial court on appeal, Objector has waived it.

*Poole v. Zoning Board of Adjustment*, 10 A.3d 381, 384 n.3 (Pa. Cmwlth. 2010). As a result, all of these claims of error are waived for purposes of appeal. *Id.*[11]

Finally, with respect to Objector's claim that the Zoning Board abused its discretion by issuing the special exception with provisos, we note that Section 4-607(2) of the Philadelphia Home Rule Charter states that "[i]n the exercise of its powers, the [Zoning Board] may . . . make such order, requirement, decision or determination as ought to be made . . . ." In light of this grant of authority, the Zoning Board's imposition of provisos was not an unwarranted extension of its function in approving the requested special exception. Moreover, contrary to Objector's assertion, the provisos were not imposed without basis but, rather, were based on recommendations made at the Zoning Board's hearing by a representative of the City's Planning Commission. *See* R.R. at 60a.[12] As a result, Objector's allegation of error in this regard is without merit. *See, e.g., Leckey v. Lower*

---

[11] *See also 8131 Roosevelt Corp. v. Zoning Board of Adjustment*, 794 A.2d 963, 968 (Pa. Cmwlth.), *appeal denied*, 812 A.2d 1232 (Pa. 2002) ("In *Teazers, Inc. v. Zoning Board of Adjustment of the City of Philadelphia*, 682 A.2d 856 (Pa.Cmwlth.1996), the Court noted that where a full and complete record was made before a zoning hearing board, a party in an appeal to a trial court may not raise issues not raised before the board.").

[12] Section 14-303(7)(c) of the Zoning Code states that "[t]he Commission shall review each application for a special exception and shall make a recommendation to the Zoning Board as to whether the application meets the criteria for a special exception listed in §14-303(7)(e) (Criteria for Review and Action by the Zoning Board) and all applicable requirements for the proposed use, including any use-specific standards in §14-603 (Use Specific Standards)."

*Southampton Township Zoning Hearing Board*, 864 A.2d 593, 596 (Pa. Cmwlth. 2004) ("Because, under [Section 912.1 of the Municipalities Planning Code[13]], the Board, utilizing its grant of discretionary power to make a judgment, can impose conditions 'it may deem' necessary, a court reviews a challenge to the reasonableness of those conditions; it does not determine whether there is substantial evidence, which is a 'fact standard,' but whether those conditions constitute an abuse of discretion. Like in any abuse of discretion review, the Board is not required to support the imposition of conditions; rather, the opposite is true-property owners are required to show that the imposition of conditions was an abuse of discretion.").

---

[13] Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10912.1.

Accordingly, the trial court's order is affirmed.

                                     _____

MICHAEL H. WOJCIK, Judge

Judge Cohn Jubelirer did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Take Back Your Neighborhood (RCO), | : | |
| | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 141 C.D. 2017 |
| | : | |
| 6600 Bustleton Associates; City of | : | |
| Philadelphia; Philadelphia Zoning | : | |
| Board of Adjustment | : | |

**O R D E R**

AND NOW, this 13th day of November, 2017, the order of the Philadelphia County Court of Common Pleas dated January 10, 2017, at April Term, 2016 No. 00009, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge